The decree of the trial court is in all things correct, and it is therefore affirmed.

---

TRI-STATE CONSTRUCTION COMPANY *v.* WATTS.

Opinion delivered February 20, 1922.

1. SPECIFIC PERFORMANCE—INDEFINITE CONTRACT.—A contract for the construction of a three-story brick building with walls of a designated thickness and containing a certain number of rooms, without specifying the size of the building or of the rooms and omitting other essential specifications, is too indefinite and uncertain to be enforced specifically.

2. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF PROOF.—To justify or authorize the reformation of a written instrument on account of a mutual mistake, the proof must be clear, unequivocal and decisive.

3. MONEY HAD AND RECEIVED — UNEXECUTED CONTRACT. — Where plaintiff advanced a sum of money to defendant on the assumption that a certain contract would be entered into, plaintiff is entitled to recover same where, without his fault, the contract was never executed.

4. MONEY RECEIVED—EVIDENCE.—In an action for breach of a building contract, where plaintiff was permitted to recover the payments made by him, evidence *held* to sustain the chancellor's finding that plaintiff was entitled only to the proceeds of notes given by him to defendant as payment on the contract which were actually received by defendant, and not to the amount for which the notes were sold by plaintiff, and from which amount he deducted an agreed sum for his services.

5. DAMAGES—FAILURE TO EXECUTE CONTRACT.—Where, without plaintiff's fault, a proposed contract was never executed, defendant was not entitled to recover his traveling expenses incurred in endeavoring to have the contract executed.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*Martin, Wootton & Martin,* for appellant.

Equity will reform a written instrument where there is a mutual mistake and where there has been a mistake by one party, accompanied by fraud or inequitable conduct of the other. Pomeroy's Equity, sec. 1376.

*Gibson Witt* and *A. B. Belding,* for appellee.

The court will not decree an alteration in the terms of a written contract unless the proof is full, clear, unequivocal and decisive. 71 Ark. 614; 85 Ark. 62; 75 Ark. 72; 81 Ark. 420; 81 Ark. 166.

WOOD, J. The appellant is a corporation organized under the laws of Tennessee. The appellee is a colored man who resided in Mississippi. On the 3rd of May, 1919, they entered into a contract which provides in part as follows:

"That the said corporation in consideration of the sum of five thousand dollars cash in hand paid, and of the sum of twenty-one thousand dollars to be paid as herein provided, and the other stipulations and agreements herein contained, doth agree to construct upon a certain lot or parcel of ground in the city of Hot Springs, Arkansas, a three-story brick building with 13-inch walls and fire walls above the roof, the roof to be of gravel and composition material, the first floor to be constructed for store purposes, and the other two floors for rooming purposes, with the necessary plumbing, wiring for electric lights, and piping for gas heating, and with a lavatory, washstand, toilet, and bath on each floor; the interior to be plastered and the wood work painted; that foundation to be of brick and concrete construction, and the work on same to begin upon acceptance and approval of the title to the said lot, and the building to be completed in three months from the commencement of operations."

The contract further provided that the appellee should furnish an abstract showing merchantable title to the lot upon which the building was to be constructed; that, if the appellee failed to furnish such title to be

approved by appellant's attorneys, then the appellant was to refund to the appellee the sum of $5,000 paid to it by appellee and, if the title were approved, the appellant was to begin the construction on the building provided for in the contract upon the execution and delivery to it of a deed of trust upon the lot. The contract provided that the payment of the balance of the purchase money was to be made in monthly payments of $150 each, bearing interest at 8 per cent. per annum on the whole sum remaining unpaid, which interest was due semiannually. The deferred payments to be evidenced by a promissory note and secured by the deed of trust. The appellee was to insure the property, pay all taxes and reasonable attorney's fees in case the appellant had to place the notes in the hands of an attorney for collection. The insurance, in case of loss, was made payable to the appellant. The above are the essential provisions of the contract which was signed by the appellee and by Mr. Halperin as president of the appellant company.

This action was begun at law in the Garland Circuit Court. The appellee set up in his complaint the contract and alleged the performance of its terms on his part and a breach thereof on the part of the appellant, and the refusal of appellant to return the cash payment which he had made appellant. He prayed for the return of this money with interest, and also for an additional sum of $2,000 as damages for the alleged breach of contract by the appellant. The appellant, in its answer, admitted the contract, averred that the appellee had paid only $4,000 on account, and alleged the willingness and ability of the appellant to perform the contract provided the appellee would pay to appellant the additional sum of $1,000 according to the contract and would purchase the lot in compliance with the contract. By way of cross-complaint the appellant alleged that the appellee had violated his contract by refusing to purchase the lot on which the building was to be erected, thereby rendering it impossible for the appellant to perform the con-

tract on its part; that, in contemplation of carrying out the contract, the appellant had purchased large quantities of building material, and had certain mill work done, and incurred other expense, all to appellant's damage in the sum of $7,000, for which it prayed judgment. The appellee then filed a supplemental complaint alleging that the contract had been fully discussed between the parties; that the contract was drawn by the appellant, and was not in compliance with their verbal agreement as to the kind of building to be erected; that it omitted essential and necessary stipulations, such as the dimensions of the building, the number and size of the rooms and various other material specifications which he specifically enumerated. The appellee alleged that their verbal agreement which was afterward to be embodied in a written contract was to erect a three-story brick building containing two storerooms and four bed-rooms on the first floor, eighteen rooms on the second and eighteen rooms on the third floor, all of the bed-rooms to be 12x14 feet with a hall 10 feet wide on the second and third floors, running the entire length of the building, and a like hall between the four rooms on the first floor; that the corner rooms were to have two windows and each of the other rooms one window, the building to be of sufficient length and breadth to provide for the number of rooms specified. There were to be suitable stairways connecting the different floors. He further alleged that he informed Halperin that he (the appellee) was not a carpenter, and was not able to understand the sufficiency and legality of such a contract; that Halperin assured the appellee that he would prepare the contract as agreed upon, and the appellee fully trusted him to do so; that before the contract was signed by the appellee he was assured by Halperin that it fully protected the appellee and was in all respects in accordance with their verbal agreement. Appellee, believing and trusting in the statements of Halperin, signed the contract and paid him in cash $2,500 and sold and delivered to him purchase money notes on certain lands

in the sum of $3,000; that the representations made by Halperin to the appellee to the effect that the contract was in accord with their verbal agreement were false, and that the written contract was designedly and fraudulently prepared for the purpose of cheating and defrauding the appellee.

The appellant answered the supplemental complaint of the appellee and admitted that the appellee and Halperin had discussed the details and specifications of the building to be erected under the contract, and alleged that their agreement was placed fully before a competent attorney employed by both parties to draft the contract in accordance with their agreement. The appellant admitted that the contract as drafted and signed did not cover their verbal agreement in detail. The appellant admitted that it was agreed that the building to be constructed was as alleged in the supplemental complaint, and alleged that this building was to be a building 32x80 feet, comprising two store-rooms each 15x60 feet and thirty bedrooms each 10x12 feet x 9 feet 6 inches in height with hallways nine feet in width. The appellant admitted that it had received in cash the sum of $2,500 from the appellee and denied all other allegations of the supplemental complaint. Appellant set up that the written contract omitted many of the substantial agreements between the parties. It reiterated its willingness to perform the contract when the same was definitely ascertained. It prayed that the cause be transferred to the chancery court in order that the contract might be reformed to express the true intent and agreement of the parties and that the rights and liabilities thereunder might be fully adjudged and determined.

The appellee replied to the allegations of the appellants' cross-complaint denying the same. The cause was transferred to the chancery court. The trial court, after hearing the testimony adduced by the parties, to sustain their respective contentions on the above issues, made written findings. The contract was introduced in evi-

dence, and the chancellor found it to be as above set forth. The chancellor in his findings, among other things, states that the "size of the building, the number and size of the rooms are not mentioned, and no one could determine from the written contract the house agreed to be erected. Both parties now claim that the character of house to be built was fully understood between them by parol contract, but they do not agree as to what the parol contract was. * * * Defendant's president states that he and the plaintiffs thoroughly understood each other; that both wanted to do what was right, but it now appears that they do not agree as to what the parol contract was, and therefore the same cannot be reformed as prayed by the defendant unless he has shown, not by preponderance of the evidence, but clearly and unequivo- cally, the contract was as he states, which he has not done." The court, in a written opinion, after discuss- ing the facts and making, among other, the above find- ings and declaring the law applicable thereto, concluded its opinion as follows: "The defendant anyway has $4000 of the plaintiff's money, and, as the true contract cannot be established, and as defendant has never offered to build the house according to its own version of the contract until suit was entered, the plaintiff should have judgment for the sum of $4000 with interest at 6 per cent. per annum from the filing of this suit."

The court entered a decree in accordance with its findings and the law as declared by it in its opinion, awarding judgment to the appellee in the sum of $4000 with interest at the rate of 6 per cent. per annum from the 13th day of September, 1919, from which judgment is this appeal by the appellants and cross-appeal by the appellee.

1. It would unduly extend this opinion, and would serve no useful purpose, to set out and discuss in de- tail the testimony. The contract, on its face, was so in- definite and uncertain that it could not be specifically per- formed. It was specified that the building was to be a

three-story brick building with 13-inch walls above the roof, the roof to be of gravel and composition material; the first floor to be constructed for store purposes and the other two floors for rooming purposes, etc. The dimensions of the building as to length and breadth are not given, nor the dimensions of any of the rooms. These, together with many other specifications, were absolutely essential to the specific performance of the written contract. With this mere general outline, if there had been a meeting of the minds of the parties as to the details of construction, as to the size of the building and rooms, doors, windows, stairways, etc., then the contract could be reformed so as to express that agreement and to render the same capable of specific performance.

The testimony of the appellee shows that he had a definite contract with Halperin for a building that was complete in all of its details; that they discussed all the details of the building before the contract was signed. There was nothing left out of it, and he specifies that the building was to be as follows: three stories, rooms 10x14 feet with a 10 foot hall on the second and third floors. The first floor to consist of four bedrooms in the rear and the balance of the first floor to consist of two storerooms. The rooms down stairs to be of the same size as those upstairs. The building to be of thirteen-inch brick walls, roof of cement and gravel. They agreed on the details of the building in all respects.

Halperin testified, exhibiting sketches, which he states were the exact copies of the original, and he gave in minute detail the dimensions of the rooms, halls and the specifications as to material, manner of construction, etc. Among other things he said that the building was to be a three-story brick building 32 feet wide by 80 feet long; that the first story was to have six rooms in the rear; that the rooms on the first floor were to be 10x12 feet with a five-foot hall between the rooms. On the second and third floors were to be rooms 12x12 with a five-foot hall.

In appellee's supplemental complaint he sets forth in detail the dimensions of the rooms and halls that were to be constructed under the contract. In its answer the appellant denies that the details are set forth correctly in the supplemental complaint, and it sets forth that the building was to be 32x80 feet long comprising two store-rooms each 15x60 feet and thirty bedrooms, each 10x12x 9 ft. 6 inches high, with halls nine feet in width. It will thus be seen that the appellant and the appellee not only do not agree as to the specifications of the building as shown by the allegations of their pleadings, but also as shown by their testimony. The testimony of Halperin, the president of appellant, shows that the specifications as set forth in his sketches, and which he testified were the correct specifications, did not correspond with the specifications set up in appellant's answer to the appellee's supplemental complaint. In this state of the record, we are convinced that the appellant has not established by a preponderance of the evidence what the oral contract was with reference to the specifications of the building that was to be constructed. The appellant has wholly failed to prove by a preponderance of the evidence such a definite contract as would justify a court of equity in reforming the same and as reformed to declare a specific performance thereof. Appellant has signally failed to establish even by a preponderance of the evidence a cause of action for the reformation of the written contract as set up in its pleadings. Since appellant was asking for the reformation of a written contract and a specific performance of such contract as reformed, it was incumbent upon the appellant to bring itself within the rules of law applicable to the reformation and specific performance governing such contracts.

In *Martin* v. *Hempstead County District No. 1,* 98 Ark. 23, 29, it is said: "It must also be borne in mind that to justify or authorize the reformation of a written instrument in such cases the proof must be clear, unequivocal and decisive." Also *Mitchell Mfg. Co.* v.

*Kempner,* 84 Ark. 349, 352; *Tillar* v. *Wilson,* 79 Ark. 256.

The learned chancellor in his opinion cited the above cases showing that he correctly understood and applied the law applicable to the facts of this record. The above familiar rule has never been departed from and has been reiterated in many later cases. See *Welch* v. *Welch,* 132 Ark. 227; *Connecticut Fire Ins. Co.* v. *Wigginton,* 134 Ark. 152; *Cain* v. *Collier,* 135 Ark. 293; *Broderick* v. *McRae Box Co.,* 138 Ark. 215; *Glasscock* v. *Mallory,* 139 Ark. 83-89.

Having concluded that the appellant is not entitled to a reformation and a specific performance of the contract because of a lack of mutuality, it is unnecessary for us to enter upon and discuss the issues as to whether or not the appellant, through its president, perpetrated a fraud upon the appellee which would deprive it of the relief it seeks, even though the contract were sufficiently definite and certain to be enforced. We therefore refrain from doing so.

2. Since the appellant has failed to establish a contract with the appellee that entitled it to specific performance, it follows, as a matter of course, that the appellee is entitled to recover from the appellant the $2,500 in cash and the $1,500 which the appellant realized out of the notes that appellee placed in the hands of the appellant as the balance of the payment of $5,000 cash mentioned in the written contract of May 3, 1919. The trial court found that the appellant refused to erect the building on the lot selected by the appellee, or by delay put it out of appellee's power to perform his part of the contract in the purchase of the lot; that the option which the appellee had for the purchase of the lot had expired through the default of the appellant.

Without discussing in detail the facts upon which the trial court based its opinion, it suffices to say that, after a careful examination of the record, we have reached the conclusion that the trial court was correct in these findings. The failure to purchase the lot and to agree upon

the particulars of the building contract as contemplated by the written contract set forth above was not the fault of the appellee, but that of the appellant. True, appellant alleged in its answer and cross-complaint that it was willing and able to perform the contract, but, as we have seen, appellant failed to establish any completed contract capable of enforcement, and the consideration for such contract necessarily fails, and, as we conclude, not through any fault of the appellee. Therefore, the appellant must refund to the appellee the amount that it obtained from the appellee on the assumption that the contract would be entered into and performed by the appellant.

3. We have also reached the conclusion that the chancellor was correct in refusing to allow appellee any damages growing out of the alleged breach of contract and also in refusing to allow him the sum of $900 which represented the loss or discount on the notes for $3,000 which the appellee had placed with appellant as a part of the cash payment contemplated by the contract. Halperin testified that the notes were turned over to him by the appellee, and he accepted the same on the assumption that they were first mortgage notes; that this was the representation made to him by the appellee; that he afterward ascertained that the notes were not first mortgage notes, but were only secured by a second mortgage, and that they were not valued for more than $1,500. He then returned the notes to the appellee and the appellee promised to send the balance of the $5,000 cash payment mentioned in the contract. That appellee later sent the appellant his check for $1,500 and this, with the $2,500, making the sum of $4,000, was all that was ever paid to the appellant under the contract.

The testimony of appellee tended to prove that after the notes were returned to him he sold the same for the sum of $2,100; that he first obtained permission of the appellant to sell the notes for that sum, and that appellant agreed to allow him to retain for his services in mak-

ing the sale the sum of $600. The testimony of the appellant on this issue as to the cash payment received by appellee from the appellant under the contract is, we believe, sustained by a preponderance of the evidence. The appellant actually realized only the sum of $4,000 out of the transaction, and this sum is all that it should be required to refund to the appellee. The damages which the appellee claims he sustained by reason of the failure of the appellant to carry out its contract, if any, were incurred by the appellee in making trips to Hot Springs in an effort to complete the contemplated contract with the appellant, which, as we have seen, was never consummated. These alleged damages therefore were not established as incidents to or results of any failure upon the part of the appellant to perform its part of the written agreement. They do not grow out of any breach of contract on the part of the appellant.

The decree of the chancery court is in all things correct, and it is therefore affirmed.