## Sutton *v.* Ford.

4-8883

220 S. W. 2d 125

Opinion delivered May 9, 1949.

*Warren E. Wood* and *Griffin Smith, Jr.,* for appellant.

*Robinson & Park, Thad Tisdale, Talley & Owen* and *Robert L. Rogers,* for appellee.

GEORGE ROSE SMITH, J. The appellant and John Jefferson, who were divorced in 1938, owned a lot in North Little Rock as tenants by the entirety. The appellees are Lewis and Jessie Ford, W. I. Stout and John Jefferson. The case arises from appellant's attempt to sell the property to the Fords and from her transfer of their purchase money note to Stout.

The divorce decree did not purport to affect the couple's joint ownership of the property. Jefferson lived on the land for a year or two after the divorce was granted, but his occupancy ended when the house burned completely. Appellant had acquired a tax deed from the State, and according to her testimony she and her second husband then proposed to build another house on the lot. She says that Jefferson disclaimed any interest in the property and told her to do whatever she wanted to with it. Jefferson denies that he made any such disclaimer of his interest in the lot.

Appellant and her second husband did build a new house on the lot and occupied it from 1944 until 1948. Appellant then contracted to sell the property to the Fords for $2,100, of which $600 was paid in cash and the balance was evidenced by a promissory note payable in monthly installments. The note recited that it was executed in connection with and was made a part of the contract to sell the land. The effect of this provision was to burden the note with the terms of the contract and thus to destroy negotiability. *Trice* v. *People's Loan & Investment Co.,* 173 Ark. 1160, 293 S. W. 1037.

When the Fords went to the house to take possession they found that it was occupied by John Jefferson, who had moved in when the appellant and her second husband vacated the house. The appellant and the Fords then consulted an attorney not now in the case, who gave appellant an opinion stating that she had good title to

the property and was entitled to sell it. On the faith of this opinion Stout bought the installment note from the appellant for $1,000. The transfer was by delivery only, without indorsement.

The Fords consulted another attorney and learned that appellant's tax title was not valid as against her first husband and that she did not have merchantable title to the land. They then brought this suit to obtain cancellation of the note and contract and to recover the sum of $726 which they had paid to appellant. The chancellor granted this relief and also gave Stout a judgment against appellant for the $1,000 he had paid for the note. Jefferson and appellant agreed in open court that the property might be sold, and the decree directed that half the proceeds of sale be paid to Jefferson and that the other half be applied first in satisfaction of the Fords' judgment and then toward the payment of Stout's judgment. There was also a provision as to appellant's present homestead which will be discussed later on.

Appellant insists that she is not liable to the Fords for the reason that her contract with them did not require her to deliver a warranty deed. In this respect the contract provides that upon completion of the payments the appellant will execute a deed warranting title against all claims arising through or under her. Appellant's theory is that Jefferson's outstanding interest would not have been a claim covered by the terms of her special warranty. But that question is beside the point as long as the contract is still in the executory stage. Appellant bound herself to convey the land to the Fords, and in the absence of any exceptions in the agreement her obligation was to deliver merchantable title. Until a deed is accepted by the purchasers, they are entitled to rescission upon a showing that the vendor's title is not marketable. *Yeates* v. *Pryor*, 11 Ark. 58, 75-76.

Appellant seeks also to escape liability to Stout and relies upon the fact that she did not endorse the note when she sold it to him. The note, as we have seen, is nonnegotiable; so Stout took subject to the Fords' defenses against appellant. Since they undoubtedly have

a good defense to the obligation, Stout in fact acquired a worthless piece of paper instead of an enforcible demand. Thus there was a total failure of consideration, entitling Stout to rescind the transaction and recover the money paid by him to appellant. *Tri-State Const. Co. v. Watts*, 152 Ark. 110, 237 S. W. 690.

We are asked to limit John Jefferson's share of the proceeds of sale to one half the value of the vacant lot rather than one half the entire proceeds of sale. If appellant's testimony as to his abandonment of his interest in the property were undisputed it might be possible to work out an estoppel against Jefferson's claim to an interest in the improvements made by appellant and her husband. But Jefferson denied having disclaimed his interest, and the chancellor elected to accept his testimony rather than the appellant's. Too, Jefferson did not have to agree to a sale of his interest in the land, and he did so upon the understanding that he would receive half the proceeds. Without his cooperation the appellant's interest alone could have been sold, and in view of Jefferson's possible survivorship it is unlikely that her interest would have brought a fair price if sold separately. We cannot permit appellant to take advantage of Jefferson's cooperation by varying the agreement by which he acquiesced in the sale.

Appellant's final contention, however, is meritorious. It was shown that a substantial part, if not all, of the money she received from the Fords and Stout was used by her in the purchase and improvement of her present home in Little Rock. The chancellor followed these funds into the property and gave the Fords and Stout a lien to secure any part of their judgments remaining unsatisfied after the sale of the North Little Rock property. This was error. While it is true that a purchase money lien may be asserted against a homestead when the loan is obtained for the specific purpose of buying the property, that principle does not apply here. The Fords advanced money to appellant for the purpose of buying the North Little Rock house and lot, and Stout advanced money for the purpose of buying

the note. Even though they all were told by appellant that she intended to use the money to buy a home, that was merely an incidental matter. This situation is more like that in which a loan is made for general purposes and is in fact used to acquire a homestead. We have held that the lender does not then have any recourse against the property acquired with the money lent. *Starr* v. *City Nat. Bank,* 159 Ark. 409, 252 S. W. 356.

Appellees urge us to uphold the chancellor's action upon the theory that the debt is owed by appellant in the capacity of a trustee, so that the homestead exemption is inapplicable. No trust relationship existed, however. We cannot impose a constructive trust, for appellant's conduct was not fraudulent. She believed that she owned the property and had her former attorney's opinion to that effect. Nor was there an express trust. Although two or three of our earlier cases indicated that a vendor holds title to the property in trust for the vendee, it is now firmly established that their relationship is in substance that of mortgagor and mortgagee, just as if a deed had been delivered and a mortgage executed to secure the unpaid balance. These cases are analyzed in Rest., Trusts, Ark. Anno., § 13. Hence the appellees' judgments are for mere breach of contract, against which the homestead exemption must be recognized.

That part of the decree fixing a lien upon appellant's present home is reversed; in other respects the decree is affirmed, with costs to the appellees.

Griffin Smith, C. J., not participating. McFaddin, J., dissents in part.

Ed. F. McFaddin, Justice (dissenting in part). I dissent from so much of the majority opinion as allows John Jefferson to receive one-half of the proceeds of the sale of the house and lot. At most, he is entitled to only one-half of the proceeds of the sale of the vacant lot.

Willie Mae Sutton testified that John Jefferson told her that she could build a house on the lot, free of any claim by him; and she did build the house, relying on

Jefferson's statement. Certainly Jefferson—after making such a representation (which I find he made)—should be estopped from receiving one-half of the sale price of the house. Limiting Jefferson to one-half of the proceeds of the sale price of the vacant lot will (1) prevent him from being unjustly enriched, and (2) give the Fords a greater amount of security for recovery on their judgment against Willie Mae Sutton; and both of these results are highly equitable.