GANTT *v.* ZINI.

4-9177                                          229 S. W. 2d 488

Opinion delivered May 8, 1950.

*Ben D. Rowland* and *Frances D. Holtzendorff,* for appellant.

*Irvin M. Brewer,* for appellee.

GRIFFIN SMITH, Chief Justice. November 23, 1946, Angelo and Alice Zini contracted with Holloway and Carrie Gantt to sell them Lot Five of Block Two, Calloway Addition to Little Rock, for which the Gantts were to pay $750, plus special improvement district taxes. A cash payment of $200 was acknowledged, the balance to be paid $12 per month including interest at six percent. Twenty payments were made, leaving $351.90 due Sept. 21, 1948, if the contract acceleration clause could have been invoked.

On May 24th, 1949, the purchasers sued for cancellation of note and contract, and for reimbursement of sums they had paid, with interest. The Chancellor sustained a demurrer to the complaint, resulting in this appeal.

The plaintiffs alleged that title to the property—the lot presumptively includes a residence—was "presently" vested in Street Improvement District No. 376 by reason of tax forfeitures, sales, and confirmation after the time for redemption had expired. Ark. Stat's, § 20-1144. Assessments for subsequent years were said to be unpaid.

A further allegation was that the property was subject to liens in favor of District 376 Annex for the years 1933 to 1942; that foreclosure decrees for 1933 to 1938 taxes were on record, and that the District's title as purchaser was confirmed January 27, 1947. A commissioner's deed had been issued to the District, although the period of redemption had not expired. The plaintiffs contended that delinquencies in District 376 were $447.35 and in the Annex $582.50,—a total of $1,029.85. Unforeclosed liens in favor of Sewer District 102 were mentioned.

The Zinis, in procuring the contract, [the complaint asserts] "willfully, intentionally, and fraudulently failed and refused to divulge to the plaintiffs the fact that interests of the sellers, if any, had been divested; but on the contrary [the Zinis] willfully represented that they were capable of conveying title by deed upon payment of the item of $750 representing the purchase price."

While the Purchasers' Agreement recites that the buyers were to pay *to the sellers* $750, "plus special improvement district taxes," payable $200 cash and the balance by note, clearly it was not intended by buyer or seller that the taxes should be included in the note—as, standing alone, the language would indicate. The contract does not expressly say that appellees were placing the Gantts in possession, although there is the statement that upon default in payment the purchasers will surrender possession. After dealing with Zini and his wife the appellants agreed with the improvement districts to discharge the delinquent taxes through payments of $60 per month.

We deal with allegations of the complaint that appellees, when the contract was made, "knew that they had been divested of all interest or equity [including the equity of redemption], and willfully and fraudulently represented to appellants that they were in a position to convey title." As evidence of this there was a contractual paragraph pledging execution of a quitclaim deed when the obligations were discharged.

In *Dunnivan* v. *Hughes,* 86 Ark. 443, 111 S. W. 271, Judge BATTLE said that where, at the time a vendor of lands executed his bond for title, he was without title to or interest in the property, and the vendee did not acquire possession of it, the vendor would be liable in damages for a breach of such bond.

The rule of law charging a purchaser of real property with knowledge of facts disclosed by the chain of his title where a deed has been executed and delivered, or tendered, is less rigid where contracts or bonds for title are involved; and where fraud has been practiced in the procurement of a contract the buyer may, when convinced that the misconduct will not be rectified, sue for rescission. This is true in particular where there are to be express covenants of title in a deed not yet ready for delivery, or where from the language of a bond for title the implication of ownership in respect of the subject-matter attaches. See *Granison* v. *Moretz,* 211 Ark. 32,

198 S. W. 2d 999; *Sutton* v. *Ford,* 215 Ark. 269, 220 S. W. 2d 125.

It is difficult for members of a Court to lay aside personal knowledge of general practices in improvement districts allowing owners of property preferential consideration to the exclusion of strangers when forfeitures have resulted in foreclosure and confirmation; and yet, in a particular case, we do not know that the Commissioners would withhold the sale of a lot. So here we cannot say that the Zinis would have been preferred. *Wilson* v. *Curb & Gutter Improvement District No. 406,* 213 Ark. 662, 212 S. W. 2d 351. The complaint alleges that the defendants had lost title, both legal and equitable, and the demurrer must be tested by its assertions.

In dismissing the action for want of equity and affirmatively sustaining the demurrer, the trial Court observed that the allegations did not entitle the plaintiffs "to the relief prayed for." This expression includes an inferential finding that appellants' contract was to assume payment of the improvement district taxes, or to take the property subject to these obligations. We agree with this determination. This does not, however, dispose of the contention that the Zinis fraudulently represented that they were title-holders and that they concealed from plaintiffs the true status of the property. For this reason the decree must be reversed, with an order remanding the cause for trial.

Justice McFADDIN concurs.