STAR LIME & ZINC MINING COMPANY v. ARKANSAS . NATIONAL BANK.

Opinion delivered November 29, 1920.

1. VENDOR AND PURCHASER—LIEN OF RENEWAL NOTES.—Notes given in renewal of notes given for the purchase of land, and evidencing the debt for the purchase of land, constitute liens on the land.

2. VENDOR AND PURCHASER—RENEWAL NOTES.—The fact that the debt for the purchase money of land is not in the form of the original notes as recited in the deed does not affect the validity of the lien except as against innocent purchasers who are in some way misled by the change in the form of the obligation.

3. EVIDENCE—RECITAL OF DEED.—Though a deed of land executed by a subvendee recites that part of the purchase money has been paid, neither the original vendor, nor one to whom he has transferred the purchase money notes, is bound by such recital.

4. VENDOR AND PURCHASER—NOTICE OF PURCHASE MONEY LIEN.—One who purchases land takes with notice of recitals in a deed in his chain of title reciting the execution of purchase-money notes.

5. VENDOR AND PURCHASER—NOTICE—INNOCENT PURCHASER.—A purchaser of land who fails to inquire at available sources, when put on notice of outstanding purchase money notes, as to whether such notes have been paid to the original seller can not claim to be an innocent purchaser.

6. VENDOR AND PURCHASER—EXTINGUISHMENT OF LIEN BY PAYMENT.—Payment of a note secured by vendor's lien extinguishes the lien, which can not be revived by reissue of the note.

7. VENDOR AND PURCHASER—WHERE LIEN NOT EXTINGUISHED.—When payment of a vendor's lien note is made on condition agreed upon at the time that the security shall be kept alive and transferred

to the new creditor, the payment does not extinguish the security, and a court of equity will enforce it, the transaction constituting, not a payment, but a purchase.

8.  VENDOR AND PURCHASER—PURCHASE OF VENDOR'S LIEN NOTE.—
Where there was an express agreement between the debtor and the cashier of a bank which furnished money to pay a purchase money note that the note should be held by the bank and the date of payment extended, but the debtor failed to notify the creditor of this agreement, and the latter accepted the money as payment and so marked the note, but the cashier declined to accept the note, and the creditor subsequently changed the indorsement so as to assign the note, this was sufficient to keep the lien alive.

Appeal from Searcy Chancery Court; *Ben F. McMahan,* Chancellor; affirmed.

*R. B. Campbell* and *Sam Latkin,* for appellant.

1.    The note was not secured by a lien against the property. A cursory examination of the records would have shown that there was no such note in existence against the property and hence no lien in favor of the original holder or any *bona fide* transferee. There was no deed or instrument of any kind on record or in existence giving a lien for this $4,000 note against the property involved as against innocent third parties who relied on the public records of Searcy County. Appellee is not a holder of the note in due course. The note which appellee accepted as collateral was past due and appellee was not an innocent holder in due course, etc. The note was further assigned "without recourse" by Hudspeth, and neither he nor the First National Bank had any authority to make collection. 7 C. J. 609; 58 N. W. 102; 63 Ohio 374.

2.    The note was a nullity when delivered to appellee. The balance due had been paid, all that was owing, and the note was marked "paid," and it could not be reissued. When a negotiable note is once paid off, the instrument becomes dead and all liens extinguished, and it can not be reissued. 3 R. C. L. 502; 63 Am. Dec. 700; 21 R. C. L. 115; 19 *Id.* 439; 6 N. Y. 449; 98 N. H. 138. The payment of the debt *ipso facto* extinguishes any mort-

gage or lien. 70 Am. Dec. 655. Once paid, the note was a nullity, 4 Ark. 546, and can not be reissued. 7 Cyc. 790. When the note was paid by Webb, the debt was extinguished and the lien destroyed. 84 Ark. 86; 8 C. J. 590.

*W. F. Reaves* and *Carmichael & Brooks,* for appellee.

1. The appellant, Star Lime & Zinc Company, can not complain because it took the deed subject to the recitals therein. The judgment as to it is right. 66 Ark. 121; 74 Am. St. 74; 81 Am. Dec. 353.

2. The note was not a nullity when delivered to appellee. It was the intention of the Arkansas National Bank to keep the note alive and "marked paid in error" shows the intention of the parties was to keep it alive as well as the lien. There were no intervening rights of third parties here, and the bank acted in good faith and without negligence and the lien should be preserved and enforced. 54 Ark. 153; Story, Eq., § 110; 2 Pom., Eq. Jur., § 849. The intention of the parties should govern 57 Ark. 219. Substantial justice has been done, and the testimony supports the decree.

McCULLOCH, C. J. This is an action to foreclose liens on certain real estate in Searcy County, and the controversy relates to conflicting claims of priority. The tract of land in controversy is known as the Bonner Lime Kiln property and was formerly owned by S. W. Woods, of Marshall, Searcy County. Woods entered into a contract to sell the property to Willson, Nicholson and Trentham, for the sum of $9,000, payable in installments, and later he conveyed it to Webb and Craig at the direction of the three original purchasers. Woods' deed to Webb and Craig recited, as consideration, the purchase price of $14,000, payable $1,000 cash and balance in five installments due in three, six, nine, twelve and fifteen months respectively, each for $3,000 except the first, which was for $2,000, and those installments were evidenced by notes executed by Webb and Craig to Woods,

which said notes were recited in the deed and constituted liens on the property conveyed. The two last notes were not delivered to Woods but at the request of Webb and Craig, he indorsed those notes in blank and "without recourse" and they were returned to Webb and Craig. The reason for this is not directly explained in the testimony but it is inferable that those two notes went to the original purchaser, Willson, Nicholson and Trentham. Subsequently Trentham transferred one of those notes to appellants Campbell and Jarman. The first three notes were delivered to Woods, which, with the $1,000 cash payment, made the consideration of $9,000 he was to actually receive as purchase price of the land. Subsequently Woods agreed to extend the time of payment of the notes which he held, and by agreement of the parties the three notes were consolidated into two renewal notes for $4,000 each, payable in six and nine months, respectively, from date of execution.

Woods assigned the new notes to A. T. Hudspeth, cashier of the First National Bank of Marshall, to secure payment of a loan of money.

Webb and Craig sold and conveyed the land to appellant Star Lime & Zinc Mining Company by deed, reciting consideration of $15,000, and also containing the following recital: "This deed is given subject to vendor's lien note of fourteen thousand dollars, of which five thousand dollars has been paid." The last mentioned grantees borrowed $15,000 from appellants Campbell and Jarman and mortgaged this property to secure the loan, and Campbell and Jarman also purchased from Trentham the note for $3,000 of Webb and Craig to Woods due fifteen months after date of execution.

Jarman was treasurer of appellant Star Lime & Zinc Mining Company. Campbell was an attorney and examined the abstract of title when the Zinc & Mining Company purchased the property and when he and Jarman made the loan. He testified that one of the Webb and Craig notes to Woods for $3,000 marked "paid" was at-

tached to the abstract, that another of the notes for $3,-000 (the one due twelve months after date) was purchased by him and Jarman. Another one of these notes (the one due fifteen months after date) was attached to a draft for $3,135 drawn on Jarman as treasurer by Hudspeth, which was paid and applied by Hudspeth on the first of the $4,000 notes held by him as collateral from Woods. Campbell testified that he was not aware of any other outstanding notes and had no information concerning the $4,000 notes in the hands of Hudspeth. It does not appear, however, that he made any further inquiry concerning the unpaid balance on the notes recited in the deed of Woods to Webb and Craig.

The first note of $4,000 held by Hudspeth was reduced to $1,000 by a credit thereon of the amount paid by Jarman, treasurer, and later Webb applied to Mays, cashier of appellee bank, for a loan of $1,056 to use in paying the balance due on the note, with interest. Webb stated to Mays that the amount sought would complete payment of the purchase price of the land. Mays agreed to advance the sum asked for and "take the note up and carry it for sixty days." Mays gave Webb the sum in currency to cover the amount of balance due on the note and instructed him to get the note. Webb paid the money to Hudspeth, and the latter marked the note "paid," and gave it to Webb who carried it to Mays. Mays declined to take the note because it was marked "paid" and sent it back to Hudspeth to get him to erase the word "paid" and assign the note without recourse, which Hudspeth did and the note was delivered to Mays in that form. This all occurred within an hour or less time.

Woods and Hudspeth instituted this action to recover on the last note of $4,000 and to enforce the vendor's lien. Appellee, Arkansas National Bank, intervened and asked for foreclosure of its lien for amount of balance due on the note held by it under the assignment of Hudspeth.

Appellant Lime & Zinc Company filed answer, defending on the ground that the $4,000 notes were not re-

cited in the conveyance and did not constitute liens on the property. Campbell and Jarman intervened and asked foreclosure of the lien of their mortgage and for the $3,000 note held by them, and that same be declared prior to any other lien.

On final hearing the chancery court decreed foreclosure of all the asserted liens, giving priority first to Woods and Hudspeth on the last $4,000 note; next to Arkansas National Bank for the balance of the first $4,-000 note assigned to Hudspeth; next to Campbell and Jarman for the $3,000 note held by them; and last to Campbell and Jarman on their mortgage notes.

Appellants, without conceding the correctness of the decree, refrained from contesting the priority of Woods and Hudspeth and they appeal only from that part of the decree which declared the priority of appellee.

It is first insisted that the notes for $4,000 never became liens on the land because they were not recited in the deed. These notes were, however, given in renewal of some of those recited in the deed, and they evidenced the debt for purchase money and constituted liens on the land. *Triplett* v. *Mansur,* 68 Ark. 230; *Daniels* v. *Gordy,* 84 Ark. 218; *Griffin* v. *Long,* 96 Ark. 269.

The fact that the debt is not in the form of the original notes as recited in the deed does not affect the validity of the lien except as against innocent purchasers who are in some way misled by the change in the form of obligation—for instance, if a subsequent purchaser took a conveyance on the faith of the exhibition of the original notes marked "paid" without information that renewal notes had been executed. But no such state of facts exists in this case. Appellants did not rely on such evidence of the fact that the original notes had been paid. The deed of Webb and Craig to the mining company contained recital that five thousand dollars of the purchase price had been paid, but neither Woods nor the holder of the notes executed to him were bound by these recitals. Woods' deed to Webb and Craig, which was in the line of

title of appellants, recited all of the notes, and appellants were bound to take notice of the lien for their payment. Only three of the original notes ($9,000 in all) fell into the hands of appellants, and this left unaccounted for $5,000 of the original debt recited in the deed. They were on notice from the recitals of the deed, and should have inquired whether or not the remainder of the debt had been paid. Having failed to inquire at available sources, they can not successfully assert a claim of being innocent purchasers.

It is next contended that the lien of the new note held by appellee was extinguished by the payment of the note while in the hands of Hudspeth, and that the subsequent erasure of the endorsement showing payment and the assignment of the note did not serve to revive the lien. It is undoubtedly true that the payment of a note secured by a lien extinguishes the lien which can not be revived by reissue of the note. *Bailey* v. *Rockafellow,* 57 Ark. 219. But it is equally established that when the payment is made on condition agreed upon at the time that the security shall be kept alive and transferred to the new creditor, such payment does not extinguish the security and a court of equity will enforce it. In other words, the transaction constitutes, not a payment, but a purchase. *Bailey* v. *Rockafellow, supra,* and cases cited. The facts of this case bring it within the latter rule. There was an express agreement between Webb, the debtor, and Mays, the cashier of appellee bank at the time the money was furnished, that the note should be "taken up and held" by appellee for sixty days so as to extend the date of payment. Webb failed to notify Hudspeth of the agreement, and the latter accepted the money as a payment and so marked the note, but Mays declined to accept it, and Hudspeth in a very short time thereafter changed the endorsement so as to assign the note. This was sufficient to keep the security alive. It is shown that Hudspeth had no authority from Woods to assign the note, but only Woods can complain. He does not complain, and is in no attitude to do so, for the assignment did not interfere

with his security for the remainder of his debt, the court having subordinated the lien of the note held by appellee to the lien of the note owned by Woods. Moreover, Woods does not appeal from the decree.

Affirmed.