McLAUGHLIN *v*. MORRIS.

Opinion delivered October 31, 1921.

1. TAXATION—DESCRIPTION OF LAND SOLD.—A tax sale of land described as the undivided one-third of a certain quarter section is void.

2. GUARDIAN AND WARD—PURCHASE OF WARD'S LAND BY GUARDIAN.—Where a guardian purchased this ward's land from one who had purchased it at tax sale, his purchase will be held to be for the benefit of his wards.

3. Adverse possession—trust relation.—Persons standing *in loco parentis* to minor children are prohibited from acquiring title adverse to such children.

4. Partition—purchase by guardian ad litem.—A guardian *ad litem* of infant defendants in a partition suit may not purchase the interest of such defendants.

5. Vendor and purchaser—notice of chain of title.—A purchaser of land is required to take notice of an infirmity appearing in the chain of his title.

Appeal from Lonoke Chancery Court, *J. E. Martineau*, Chancellor; affirmed.

*Will G. Ackers*, for appellant McLaughlin.

*Trimble & Trimble*, for appellant Robinson.

*Oscar E. Williams*, for appellees.

The tax deed upon which appellants base their title is void for indefiniteness of description. 94 Ark. 306, 126 S. W. 830; 77 Ark. 321; 92 S. W. 1124; Kirby's Digest §§ 6976, 7024. 7083 and 7085; 79 Ark. 442; 50 *Id.* 689.

One who stands in a fiduciary or a *quasi* fiduciary capacity toward another cannot purchase the property of his *cestui que trust*. 33 Ark. 575; 30 Ark. 44; 54 *Id.* 627; 16 S. W. 1052; 13 L. R. A. 490; 23 Ark. 622; 49 *Id.* 243; 4 S. W. 776; 112 Ark. 389; 55 *Id.* 85; 61 *Id.* 575; 73 *Id.* 575; 75 *Id.* 184; 78 *Id.* 111; 89 *Id.* 178; 95 *Id.* 434; 96 *Id.* 573.

An order decreeing attorney's fees and costs as a lien against infants' lands is void and may be attacked collaterally. 47 Ark. 86; 75 *Id.* 34; 76 *Id.* 146; 105 *Id.* 439.

Rosie Johnson and J. A. B. McCrary are not barred by laches or limitations. Kirby's Digest, § § 5056, 5057; 55 Ark. 85; 87 *Id.* 238.

Appellants are chargeable with notice of the defect in the chain of title. 35 Ark. 100; 205 S. W. 113; 39 Cyc. 60.

Smith, J. Prior to 1880 Wash Ballard and his two brothers owned the southeast quarter of section 33, township 1 north, range 10 west. Wash Ballard died, and M. C. Armstrong was appointed guardian of the minor children. On May 11, 1891, Armstrong filed a final settlement of his guardianship of John Ballard,

the oldest of the children, who had then come of age; but it does not appear that he ever made final settlement of his guardianship of the three younger children. In 1884 Armstrong, as guardian, filed a suit for the partition of the land owned by the Ballard brothers, and in the decree rendered in that cause a tract of land on the east side of the southeast quarter, containing 55.35 acres, was apportioned to the Wash Ballard children.

On June 12, 1893, there was a sale of a tract of land, described as "Und. 1-3 southeast quarter section 33 * * * ," for the taxes of 1892. This sale was made to J. D. Shulte, who assigned his certificate of purchase to W. P. Fletcher, who, upon the expiration of the period of redemption, received a tax deed therefor. On December 21, 1896, Fletcher conveyed an undivided half of the undivided third southeast quarter section 33 to Julia Cleveland, Irene Ellis and Emanuel Ballard. Jeff Cleveland paid the purchase price to Fletcher and had the deed made to Julia, his wife, and to Irene Ellis, who was Julia's niece and a minor, and to Emanuel Ballard, a brother of his wife, who was also a minor. Julia Cleveland was a daughter of Wash Ballard by his first wife, and on her death she was survived by two sons, whose names are Ben and Grover. On December 16, 1898, Fletcher conveyed to Armstrong an undivided half of an undivided 1-3 southeast quarter of section 33. Armstrong had been in possession of the land as guardian of the minor children, and after the deeds from Fletcher were executed Armstrong and Cleveland shared the possession jointly.

The testimony shows that at the time of the execution of the deed from Fletcher to Cleveland, Emanuel Ballard was a minor and on his death was survived by an only child, a girl known as Rosie Johnson, who was also known as Fannie Ballard, and who was born December 20, 1898. On of the questions of fact in the case is the identity of Fannie Ballard and Rosie Johnson, and, if the same person, whether she was the only child of Emanuel Ballard. Without reviewing here the testi-

mony on this issue, we affirm the finding of the court below that Rosie Johnson is Fannie Ballard, and was the only child of her father, Emanuel Ballard. Rosie Johnson's mother probably had other children after the death of Emanuel; but that is unimportant, as the inheritable blood was on the part of the father, and not that of the mother.

After the death of Emanuel Ballard in 1899 Julia Cleveland took Emanuel's daughter Rosie, then an infant a year old, into her home as a member of the family, where Rosie lived until her marriage in 1913. Irene Ellis, another niece of Julia Cleveland, was also taken into Julia's home as a member of her family and reared by her. Irene Ellis was one of the three grantees in the deed from Fletcher dated December 21, 1896. Irene Ellis was the daughter of a child of Wash Ballard by his first wife, and Irene's ancester took no interest in the lands because Wash Ballard had conveyed his interest in the quarter section to his children by his second wife.

Susan Ballard intermarried with one J. W. Mc-Creary. Susan died in 1894, and was survived by only one child, a son named J. A. B. McCreary, who was born May 30, 1894, and was therefore just twenty-two years old when this suit was brought. Rosie Johnson became of age December 20, 1916, the day before this suit was filed. It does not appear that, at the death of Emanuel Ballard and Susan McCreary, Armstrong, their guardian, had made final settlement of the guardianship or had been discharged by the probate court.

In 1901 Armstrong sued Jeff Cleveland and Julia, his wife, and Irene Ellis and Fannie Ballard for partition. Fannie Ballard was about three years old at that time, and Irene Ellis was also a minor. J. C. Boyd, an attorney, was appointed guardian ad litem to represent these minors. Boyd also represented Julia and Jeff Cleveland, and was allowed a fee of fifty dollars by the court, which was declared a lien on the land. Partition of the land was made in kind, and the north half was

given to Armstrong and the south half to Julia Cleveland and the other defendants. The fee allowed Boyd was not paid, and he 'caused an execution to be issued on the judgment, and in January, 1906, the south half was sold under this execution, and Boyd himself became the purchaser. Later, after obtaining the sheriff's deed, Boyd executed a quitclaim deed to Jeff Cleveland for the land thus purchased for the recited consideration of one dollar. Jeff and Julia Cleveland died, and their children, Ben and Grover, executed a quitclaim deed to their interest in the land to W. H. McLaughlin and to J. P. Kerby.

In the partition suit between Armstrong and Cleveland *et al.*, Armstrong was represented by George Sibley and the firm of Trimble & Robinson, attorneys, and a fee was allowed these attorneys, which was fixed as a lien on the north half, this being the land assigned their clients, the heirs of Armstrong, who had died before the final decree was entered. This fee was not paid, and at a sale under an execution which issued on this judgment T. C. Trimble, Jr., who was not then a member of the firm of Trimble & Robinson, became the purchaser, and, by mesne conveyances from T. C. Trimble, Jr., this north half was conveyed to J. H. Robinson.

This suit was brought by Rosie Johnson and her mother, Mollie Morris, and by J. A. B. McCreary and his father, J. W. McCreary. Ben and Grover Cleveland were made parties defendant, but they made no defense. The other defendants, W. H. McLaughlin and J. P. Kerby and J. H. Robinson, have a paper title which has its origin in the tax sale to Fletcher; and they say that this title, if not good originally, has been made so by possession of Armstrong and Cleveland, who lived on the land until a short time before the institution of this suit; and that the plaintiffs are barred by limitation.

Pending this litigation E. D. Kidder obtained from Rosie Johnson a quitclaim deed for her undivided interest; but that deed was canceled in the final decree which was rendered November 15, 1920. This decree

recites that Kidder prayed, and was granted, an appeal; but his appeal was never perfected. The transcript herein was filed May 10, 1921, at which time McLaughlin and Robinson prayed an appeal, which was granted by the clerk of this court. Not having perfected his appeal, we need not now review the action of the court in canceling Kidder's deed. Section 2135, C. & M. Digest; *Damon* v. *Hammonds,* 73 Ark. 608.

The court found that the plaintiffs Rosie Johnson and J. A. B. McCreary are each the owner of an undivided one-third of the land sued for; and that the defendant J. H. Robinson is the owner of an undivided third in the north half of said land; and that the defendants W. H. McLaughlin and J. P. Kerby are the owners of an undivided one-third of the south half of said land, each owning an undivided one-sixth interest.

The tax deed to Fletcher was void. The description employed in the tax sale and in the deed made pursuant thereto is identical with the description which the court held to be bad in the case of *King* v. *Booth,* 94 Ark. 306, except that in that case the description was "Und. 2/6," while here the description is Und. 1/3." We will not repeat here the reasoning of the court in that case distinguishing it from the earlier case of *Payne* v. *Danley,* 18 Ark. 441. Moreover, it may here be said that the description now under review was bad because it appears that in 1884 this quarter section was actually partitioned in a suit brought by Armstrong, as guardian, for that purpose, and therefore the interest of the Wash Ballard heirs was not an "undivided" interest.

The big question in the case is whether or not a trust relation existed on the part of Armstrong and Cleveland and his wife which prevented them from acquiring the title to the land in suit. After a careful consideration of the testimony we have concluded that the finding of the court below, that there was a trust relation, is not contrary to the preponderance of the testimony.

Armstrong was the administrator of Wash Ballard's estate; and he was guardian of Emanuel Ballard, the father of Rosie Johnson; and was also the guardian of J. A. B. McCreary's mother. As administrator and as guardian he took possession of the land, and remained continuously in its possession until the time of its partition in the suit brought by him for that purpose. It appears that he was removed as administrator for mismanagement of the estate; but it is not shown that he ever made a final settlement of his guardianship or received his discharge; and, in the absence of that showing, his purchase from Fletcher must be held to be for the benefit of his wards. *Sconyers* v. *Sconyers,* 141 Ark. 256; *Holloway* v. *Eagle,* 135 Ark. 206; *Sorrels* v. *Childers,* 129 Ark. 149; *Hawkins* v. *Reeves,* 112 Ark. 389; *Waldstein* v. *Barnett,* 112 Ark. 141; *Haynes* v. *Montgomery,* 96 Ark. 573; *Eagle* v. *Terrell,* 95 Ark. 434; *Burel* v. *Baker,* 89 Ark. 168; *Reeder* v. *Meredith,* 78 Ark. 111; *Montgomery* v. *Black,* 75 Ark. 185; *Thweatt* v. *Freeman,* 73 Ark. 575; *Thomas* v. *Sypert,* 61 Ark. 575; *Gibson* v. *Herriott,* 55 Ark. 85; *Hindman* v. *O'Connor,* 54 Ark. 633; *Clements* v. *Cates,* 49 Ark. 242.

Cleveland and his wife are in no better circumstances as regards their title. Cleveland took the deed from Fletcher to his wife and to Irene Ellis and to Emanuel Ballard. Julia was a child by Wash Ballard's first marriage, and Irene Ellis was the daughter of another child by Wash Ballard's first wife; and Emanuel Ballard was Julia Cleveland's brother. Irene and Emanuel were at the time both minors, and both were then living with Julia Cleveland as members of her family. Upon Emanuel Ballard's death, Julia took Rosie, his infant daughter, into her home, where she lived as a member of Julia's family until her marriage in 1913.

Julia and her husband Jeff thereafter stood *in loco parentis* to the infant child of Emanuel, as they had to Emanuel himself at the time of the execution of the deed from Fletcher. It is true that, in the deed to them from

Fletcher made in 1896, they had Emanuel named as grantee, along with Julia Cleveland and Irene Ellis; but Emanuel was then a minor and his brother-in-law and sister, Jeff and Julia, could not thus acquire an interest in the land adverse to him. See cases cited above on the inability of Armstrong to purchase.

The testimony as to Emanuel Ballard's age at the time of his death in 1899 is conflicting; and the contention is made that as he died in 1899 the statute of limitations has since run against his heir, Rosie Johnson. This is not true because the trust relation on the part of Julia and Jeff continued down at least until the time of Rosie's marriage in 1913, until which time she had lived on the land with her uncle and aunt, and the bar of the statute could not have fallen between that date and December 21, 1916, the date of the institution of this suit.

As to J. A. B. McCreary, there can be no question of limitation in any event, as he was born May 30, 1894, and his mother died that year, and Fletcher did not obtain the tax deed under which his adversaries claim title for more than a year thereafter, and he became of age May 30, 1915, which was only a little more than a year before this suit was brought.

Among the numerous other objections to the decree of the court below, it is insisted that the will of Wash Ballard was invalid as against his children by his first wife, because they were not mentioned therein. Such appears to be the fact.

It is also insisted that the deed from Wash Ballard to his children by his second wife is void because of the indefinite description, and, if not void for that reason, that it was void because it undertook to convey a particular part of a quarter section, containing sixty acres, when the interest then owned by Ballard was an undivided third.

Neither of these objections to this deed appears to be well taken. The deed from Wash Ballard conveyed a tract of land in shape of a parallelogram off the east side;

and, while it does appear that . Wash Ballard did not then own that land in severalty, it does appear that when the partition was made the grantees in that deed were given substantially that land, the difference being that they were given only 55.35 acres, but that land lay within the boundaries of the sixty-acre tract. It is this 55.35-acre tract which forms the subject-matter of this litigation, and that land was embraced in the tract described in the deed from Wash Ballard. We do not know what showing was made in the suit for partition brought by Armstrong back in 1884; but we do know that the land now in litigation was assigned to Armstrong's wards; and we also know that this land was included in Wash Ballard's deed, although that deed conveyed about five acres more land than was assigned to Armstrong's wards.

It is insisted that, as Rosie Johnson, or Fannie Ballard, was a party to the partition decree in the suit of Armstrong *et al.* v. Cleveland *et al.* (and such is the fact), her title passed by operation thereof in the following manner. The court allowed J. C. Boyd a fee of $50 for his services in that case; and as the fee was not paid an execution issued and the whole half interest there assigned to the defendants in that case was sold, at which sale Boyd became the purchaser. Later Boyd received a sheriff's deed, and thereafter conveyed to Cleveland, whose heirs, upon the death of their ancestor, conveyed to McLaughlin and to Kerby. But the sale to Boyd was void for the reason that he was the guardian *ad litem* of the infant defendants; and by sec. 8115, C. & M. Digest, it is provided that persons standing in that relation may not purchase at a partition sale.

It is said that McLaughlin had no notice of the infirmity in the sale. He makes no showing to that effect, although he alleges the fact so to be in his answer. But this infirmity appears in the chain of his title, and he is therefore affected with notice of it. *Star Lime & Zinc Mining Co.* v. *Arkansas National Bank,* 146 Ark. 246; *Madden* v. *Suddarth,* 144 Ark. 79.

The purchasers claiming title through T. C. Trimble, Jr., acquired no title, for the reason that Trimble himself acquired none in buying in the Armstrong title, for, as we have herein shown, Armstrong was a trustee, and as such held the title.

Upon a consideration of the whole case we are of opinion that the decree of the court below is correct, and it is therefore affirmed.