DAY *v.* JOHNSTON.

Opinion delivered April 30, 1923.

1. EXECUTORS AND ADMINISTRATORS—GUARDIAN AND WARD—PROBATE SALES.—Under Acts 1919, No. 263 (Crawford & Moses' Dig., §§ 181, 5028) providing "that in all guardians' and administrators' sales heretofore or hereafter made, the finding and recital in the judgment and decree of the probate court authorizing and ordering any such sale that the guardian or administrator was duly and legally appointed and qualified; that the sale was conducted according to law; and that the facts set forth in the petition entitled the said guardian or administrator to make the said sale, shall be conclusive and binding on all parties having or claiming an interest in the said sale, save upon direct appeal to the circuit court made in such cases as are now provided by law; and such finding and judgment or decree of the probate court shall not be open to collateral attack save for fraud or duress; provided, that as to sales heretofore made, all parties having any interest therein shall have 12 months after the passage of the act in which to attack such sales," *held* that as to sales previously made the act is valid as a statute of limitations.

2. EXECUTORS AND ADMINISTRATORS—GUARDIAN AND WARD—APPOINTMENT OF NONRESIDENT.—Though the statutes providing for the appointment of administrators and guardians contemplate that only residents of the State shall be appointed, yet where the probate court approved the appointment of nonresidents, such order imported a finding that the appointees were qualified, and is conclusive on that question upon collateral attack.

3. EXECUTORS AND ADMINISTRATORS—GUARDIAN AND WARD—CONFIRMATION OF PRIVATE SALES.—A private sale of the lands of a decedent, made under an order of the probate court for the payment of his debts, as also a private sale of the lands of a minor to provide funds for his education, is not void when confirmed, under Acts 1919, No. 263 (Crawford & Moses' Dig., §§ 181, 5028).

Appeal from Clay Circuit Court, Western District; *W. W. Bandy,* Judge; reversed.

*C. T. Bloodworth,* for appellants.

The probate court had jurisdiction to sell the lands of the minors. Sec. 5037, C. & M. Digest. The deeds of the guardian and administratrix are regular on their faces, and show that the court had jurisdiction, and the

recitals are evidence of the legality and regularity of the sales. Sec. 1534, C. & M. Digest. The fact that the administratrix and guardian were not residents of the State is not indicated by their letters, and the question is concluded by curative act of 1919. Secs. 181, 5028, Crawford & Moses' Digest. Appellees do not come within the saving clause of the statute, and the court erred in not directing a verdict for appellants. The court erred in directing a verdict for appellees for two-thirds of the lands in any event, both widows having conveyed their dower interest therein and appellees making no claim under said conveyances. 19 C. J. 558.

*Oliver & Oliver,* for appellees.

The findings, record and recitals in the probate court's record of the sale of these lands do not bring the transaction within the provisions of the curative act, which has no application. Secs. 181, 5028, C. & M. Digest. The person assuming to be guardian was a non-resident of the State and could not act as guardian. Sec. 4992, C. & M. Digest. This question not having been raised below, cannot be urged here. Appellants did not acquire the dower interest of either of the widows through their quitclaim deeds to Lewis. The widow of P. C. Johnston was seized of both dower and homestead interest in the land, upon the death of her husband, and the dower being the lesser was merged in the greater homestead interest. 98 Ark. 118; 21 C. J. 1034, § 234, 1035, § 235, 1038, § 240. The grantee acquired no interest of her quitclaim deed, as it worked an abandonment of the homestead interest. 147 Ark. 555. The title immediately vested in the heirs of P. C. Johnston. 147 Ark. 555, *supra.* If dower not merged, no title to the interest passed to appellant's grantor, as dower had never been assigned to Mollie Johnston. 31 Ark. 334; 111 Ark. 305; 84 Ark. 557. Minnie Johnson had no dower in any part of the 160-acre tract, as it constituted the homestead of her husband's mother, Mary

Johnston. H. V. Johnston was never seized of any part of the land. Sec. 3514, C. & M. Digest; 98 Ark. 118.

SMITH, J. Judgment was rendered for appellees in the court below upon the assumption that the question presented was one of law, and not of fact, and there appears to be no substantial conflict in the testimony on which the court directed the jury's verdict.

The litigation arose out of the following facts. P. C. Johnston died about the year 1900, owning and in possession of a quarter section of land in Clay County, Arkansas, of which about forty acres were in cultivation. At the time of his death he was survived by his widow and an adult son, H. V. Johnston. Soon after P. C. Johnston's death his widow moved to Corning, Arkansas, where she lived with her son until his death about two years later, in 1903. H. V. Johnston was survived by his widow and three minor children.

The land was Mrs. P. C. Johnston's homestead, but, after the death of her son, she and her son's widow moved across the State line into Missouri, where it appears they have since resided. These widows decided to sell the land, and contracted its sale to R. L. Lewis, and, pursuant to this agreement, they, on August 14, 1903, each executed to Lewis a quitclaim deed conveying such interest as they had in the land. In June prior to the execution of these deeds Mrs. P. C. Johnston was appointed administratrix of her husband's estate, and Mrs. H. V. Johnston was appointed guardian of H. V. Johnston's minor children. These appointments were duly approved and confirmed by the probate court. Thereafter petitions were filed by both the administratrix and the guardian, praying that an order be made directing the sale of the land. The administratrix's petition recited that it was to the best interest of the estate, and that of the guardian, that the sale of the land was necessary to educate the minor children. The prayers of both petitions were granted, and, in separate orders of the court, both the administratrix and the guardian were

directed to sell the land, after having it appraised, at a private sále to Lewis, for the sum of $1,500. The land was appraised at a thousand dollars; and it is not questioned that $1,500 was a fair and reasonable price for the land at that time. After living on the land until the date of his deed to appellants, Lewis sold it to the appellants here. Two of H. V. Johnston's children brought this suit to recover an undivided two-thirds interest in the land, the other child not having joined in the suit; and, as we have said, there was a judgment in their favor under the direction of the court.

The proceedings in the probate court appear to have been regular on their face. There are two separate and distinct proceedings directing the sale of the land, and every step leading to the sale was first directed, and later approved, by the court. The administratrix and the guardian reported the sale, and the court approved the report thereof. A deed was executed by the administratrix, and another by the guardian, and each of these deeds was approved.

It appears, however, from the testimony of both the administratrix and the guardian, that, at the time of their sales, they were both residing in Missouri, and it appears, from the face of the proceedings in the probate court, that the land was sold privately. If there was any other defect in the sale, it is not pointed out.

It is conceded that the action of the court in declaring the deeds to Lewis void would have been correct but for act 263 of the General Acts of 1919, page 193, entitled "An act to render conclusive judgments and decrees of the probate court in guardians' and administrators' sales."

Section 1 of this act reads as follows: "That, in all guardians' and administrators' sales heretofore or hereafter made, the finding and recital in the judgment or decree of the probate court authorizing and ordering any such sale, that the guardian or administrator was duly and legally appointed and qualified, that the sale

was conducted according to law, and that the facts set forth in the petition entitled the said guardian or administrator to make the said sale, shall be conclusive and binding on all parties having or claiming an interest in the said sale, save upon direct appeal to the circuit court, made in such cases as are now provided by law; and such finding and judgment or decree of the probate court shall not be open to collateral attack, save for fraud or duress. Provided, that, as to sales heretofore made, all parties having any interest therein shall have twelve months after the passage of this act in which to attack such sales." Section 2 of the act contains the emergency clause, and the act was approved March 12, 1919.

This section 1 twice appears in Crawford & Moses' Digest. It is first found as first § 181 in the chapter on Administration, there being two sections numbered 181; and is next found as § 5028 of the chapter on Guardian and Ward.

It applies alike to sales by administrators and guardians, and appellees do not come within the saving clause, for this suit was begun February 15, 1922, and the time limited by the act within which existing sales might be attacked expired in 1920.

It will be observed that the act applies to all sales "heretofore or hereafter made," and the question of its constitutionality, although not discussed in the briefs, has been raised in the consultation of the judges.

The act, in so far as it relates to sales heretofore made, might well be sustained as a statute of limitations, as a reasonable time was allowed after the act was passed in which an interested party could prevent the consequences of the act falling upon him. *Towson* v. *Denson,* 74 Ark. 302, and cases there cited to this point. *Cottonwood Lbr. Co.* v. *Harris,* 78 Ark. 95.

The act applies also to future sales, and the question of the separability of these provisions would arise, if one should be held valid and the other void, so that,

if we hold the provisions of the act valid so far as they relate to past sales, we must also consider the validity of its provisions affecting future sales, unless it clearly appears that the provisions are separable. There is such doubt about the separability of these provisions that we prefer to consider the validity of the act in its entirety. In doing this it will be necessary to consider prior decisions of this court and preceding legislation on this subject.

By § 140, C. & M. Digest, the probate court is directed, upon a proper showing made by the administrator of the estate of any deceased person, to order the sale and conveyance of any lands belonging to such estate, whenever, in the judgment of such court, it would be materially of advantage to the estate to make such sale, and to reinvest the proceeds, etc. And by § 5037, C. & M. Digest, the probate court is authorized to sell minors' lands to provide funds for their education. There was therefore no lack of jurisdiction on the part of the court to order the sales which were made.

Our statutes contemplate that only residents of the State shall be appointed administrators and guardians; and, while it now appears that both the administratrix and the guardian were nonresidents at the time they made their respective sales, and possibly at the time of their appointment, the probate court approved each appointment, and this order of approval imports a finding that the appointees were qualified for appointment. The court may have erroneously found the fact, but its order involved a finding of fact, and is conclusive of the question.

There appears to have been no authority under the law to sell this land privately, either by the administratrix or the guardian, yet the act quoted appears to cure that defect. Is the act effective for that purpose?

A very famous case in our probate jurisprudence is that of *Apel* v. *Kelsey,* which was twice before this court, the first opinion appearing in 47 Ark. 413, and

the second in 52 Ark. 341. The case involved the valid- . ity of a probate sale in the making of which it was alleged no proper notice had been given of the application for the order of sale. This objection was disposed of by saying that the non-publication of the notice was merely an error, to be corrected on appeal, and one which did not affect the jurisdiction of the court. An objection that the land had not been viewed and appraised was disposed of in a similar manner, the court saying: "Upon a collateral attack, the only inquiry commonly is, had the court jurisdiction? For, if it had, the purchaser is not bound to look behind the order of the court, or inquire into its mistakes."

The court, however, expressly reserved its decision on the effect of a private sale on the validity of the title for future consideration, and in so doing said: "It may be that this is such a patent error, on the face of the proceedings, as to affect the purchaser and all claiming under him with notice."

It did not satisfactorily appear whether the sale had been confirmed, and the court reversed the judgment and remanded the cause, with certain directions, "unless the plaintiff will undertake to show by record evidence that the sale therein recited was duly confirmed."

The cause was remanded, and it was shown that the sale had been confirmed, and it became necessary therefore for the court to decide the effect of the confirmation of a private sale. This the court did in the following language: "It is impossible upon principle to distinguish the question here presented from those so often decided heretofore, and, in obedience to the settled doctrine of this court, fixing the character of the probate court, and the effect of its judgments, we hold that a private sale of land by an administrator, upon order of that court, is not void when confirmed."

The court then proceeded to deprecate the state of the law growing out of the prior decisions of the court, which had become rules of property, and the aid of the

Legislature was invoked to change the rule, giving the same verity to the judgments of probate courts as was given to the judgments of other courts of record.

Thereafter, at the next session of the General Assembly, an act was passed entitled "An act to protect estates of minors from loss," which reads as follows: "All probate sales of real estate, made pursuant to proceedings not in substantial compliance with statutory provisions, shall be voidable." Act 106, Acts of 1891, p. 189. This act is found in C. & M. Digest as second § 181 thereof, also as § 5027.

The meaning of the word "voidable" appearing in this act was interpreted by us in the case of *Mobbs* v. *Millard*, 106 Ark. 563, and in reviewing the legislation we said: "This decision (*Apel* v. *Kelsey*, 52 Ark. 341) was rendered at the November term, 1889, and the court, speaking through Mr. Justice SANDELS, deplored this condition of the law, and in clear and forceful language set forth at length the reasons why the law should be changed in this respect. The learned justice said that the courts were powerless because former interpretations of the law had become rules of property, but called attention to the fact that the Legislature had the power to render invalid future transactions of this kind. At the next session of the Legislature § 3793 of Kirby's Digest was enacted. It is reasonably certain, then, that the Legislature had knowledge of the condition of the law as announced in the case of *Apel* v. *Kelsey*, 52 Ark. 341, and, in response to the suggestion made by the court, expressly intended to make a change in the law. If this is not true, it is evident that the act in question can have no force and effect whatever."

We held that the sale there attacked was not in substantial compliance with the statute, and was invalid, but we there also said: "We do not wish to be understood as holding that errors and irregularities in making the appraisements or in otherwise complying with the provisions of the statute in regard to the sale would

not be a substantial compliance with the provisions thereof. See *Harper* v. *Smith*, 89 Ark. 284. But we do hold that an essential requirement of the statute in regard to the sale of a minor's land cannot be entirely omitted and wholly disregarded."

Upon the authority of this case we would be constrained to hold that the sale here attacked, having been privately made, was not in substantial conformity to the law, and therefore void; but the General Assembly, by the act of 1919, set out above, has enacted otherwise.

In other words, the General Assembly of 1891 changed a rule of property as announced by this court, and a subsequent session of the General Assembly has reenacted the rule of property, at least in the particulars stated therein. We gave effect to one act, and we perceive no reason why we should withhold giving effect to the other; and, when we have given it effect, we must hold that the judgments of probate courts become impervious to collateral attack if they contain the jurisdictional recitals which the General Assembly has determined are essential to constitute a valid sale against collateral attack. In short, the decision of *Apel* v. *Kelsey*, 52 Ark. 341, is reenacted as to those probate court judgments which contain the recitals that the court authorized and ordered the sale, that the guardian or administrator was duly and legally appointed and qualified, that the sale was conducted according to law, and that the facts set forth in the petition entitled the guardian or administrator to make the sale; and, this being true, private sales made under the orders of the court are not void when confirmed, and are subject to attack only on the direct appeal to the circuit court allowed by law, save for fraud or duress, as provided in this act of 1919.

As to past sales, the act is sustained as a statute of limitations. As to future sales, it is valid as prescribing the recital of facts which are essential to confer jurisdiction on the probate court and make such sales

impervious to attack on account of the omission of other requirements which are not made jurisdictional.

Without setting out the recitals of the numerous probate court orders appearing in the record, we announce our conclusion to be that these orders contain substantially the recitals required by the act of 1919.

It follows therefore that the verdict should have been directed for appellants, and the judgment against them, not only for the land but for the rents also, which the jury found, will be reversed, and the cause remanded with directions to dismiss the complaint.

HART, J., dissents.