LEVINSON *v.* TREADWAY.

4-3668

Opinion delivered January 21, 1935.

*Coleman & Riddick,* for appellant.

*Charles B. Thweatt* and *C. W. Norton,* for appellee.

MEHAFFY, J. On May 26, 1933, the appellee, Mamie Sanders Treadway, began this action in the Pulaski Chancery Court against the Union Trust Company, Mona Lois Briscol, Anne L. Robinson, W. E. Harding, Henry Levinson, and Mrs. Henry Levinson. She alleged that she was 19 years old at the time of filing the suit; her name prior to May 24, 1917, was Virginia Van Winkle; she was a ward of the Arkansas Children's Home in Little Rock. On May 24, 1917, in the Pulaski Probate Court, John H. Sanders and his wife, Allie V. Sanders, both now deceased, being citizens and residents of Pulaski County, adopted the appellee under a judgment of the probate court. Appellee's mother appeared in open court and consented to the adoption. Appellee's father was dead at the time.

The judgment of adoption provided that John H. Sanders and Allie V. Sanders, his wife, adopted Virginia Van Winkle and that thereafter she should be regarded and treated in all respects as the child of John H. Sanders and Allie V. Sanders. The name of the child was changed to Mamie Virginia Sanders. The judgment also provided that J. H. Sanders and Allie V. Sanders and

the minor child should thereafter sustain toward each other the legal relation of parent and child, as provided by law. Appellee lived with J. H. Sanders and Allie V. Sanders, and was kept by them and treated the same as their own child, at their home at 101 Thayer Street in the City of Little Rock, which is lot 16 in block 4, Capitol View Addition to the city of Little Rock, until the death of said Allie V. Sanders, about April, 1921. The said Allie V. Sanders had no other child, and the appellee became her sole heir at law. She alleges that Allie V. Sanders was the owner of and in possession of, and at the time of her death, occupied said property as her home, which property thereupon descended to and vested in appellee as a homestead until she became 21 years of age; and that said property vested in her in fee simple title; that J. H. Sanders, in April, 1921, caused to be probated in the probate court what purported to be the last will and testament of Allie V. Sanders, in which will the entire estate, both real and personal, was devised to J. H. Sanders. Appellee was not provided for or mentioned in said purported will.

In 1921 said J. H. Sanders filed in the Pulaski Chancery Court a suit against appellee seeking to deprive appellee of any interest in the property of Allie V. Sanders, by alleging that Allie V. Sanders had held title to the above property in trust for him, and that the appellee had no interest in said property.

This suit was defended by Melbourne M. Martin, who was appointed by the court as guardian *ad litem* for appellee. There was a decision in the chancery court in favor of J. H. Sanders, and appeal prosecuted to the Supreme Court, where the decree was reversed and the case remanded for a new trial.

J. H. Sanders thereafter married, his wife being Maud H. Sanders. In September, 1923, the said J. H. Sanders executed a last will and testament, leaving to appellee such portion of his estate as she might be entitled to under the laws of the State, and enjoined upon Maud H. Sanders, his request that she become guardian of the child, etc.

John M. Davis was appointed executor of the estate of J. H. Sanders, deceased. It is alleged that J. M. Davis

occupied a position of trust with regard to appellee; that Davis and Maud H. Sanders conceived a plan by which the Arkansas Children's Home would again have the custody and responsibility of appellee, and that they would at the same time deprive appellee of her inheritance; that the said J. M. Davis, as executor, falsely included in the inventory of the real estate of John H. Sanders, deceased, the property above described, and falsely represented to the Pulaski County Probate Court that Sanders had been the owner thereof; that Dr. O. P. Christian, the superintendent of the Arkansas Children's Home of Little Rock, was prevailed upon to become guardian of appellee for the sole and only purpose, as Davis and Mrs. Sanders declared to him, that the legal custody of appellee might be relinquished by Mrs. Sanders to the said Arkansas Children's Home, and as an inducement provided that said Maud H. Sanders would pay to the guardian, out of her individual resources, $1,000 for the benefit of appellee; and, upon these representations, the said Dr. Christian, on October 20, 1924, made application for and was granted letters of guardianship, and qualified as such, and then and there signed papers submitted to him by John M. Davis and his attorney, which Dr. Christian understood to be necessary to carry out the object for which he understood he had been appointed; that Dr. Christian was not advised by any one that appellee was the owner of the real estate above described, or that she had any interest in it or that she had any property whatever; but the papers which John M. Davis had previously caused to be prepared, and which were then signed by the said guardian, were not what he was told they were, and the guardian unknowingly and innocently signed a petition, asking authority of the probate court to make sale of appellee's title to real estate above described, stating in the petition that the title to said property was doubtful and disputed, and could not be sold for any substantial sum; and that there would be litigation, and appellee had no means to combat litigation, and the said Davis offered to pay for the disputed claim to said property $1,000, in order to clear the title thereto, and that it was to the best interest of

appellee that said offer be accepted. At the same time the said guardian unknowingly and innocently executed what purported to be a guardian's deed to the property above described; that a fraud was practiced on the probate court; that it was alleged in the petition for an order to sell that the property belonged to J. H. Sanders and his wife, Allie V. Sanders, when in truth and in fact said Allie V. Sanders was the sole owner thereof; that, after the Supreme Court of Arkansas had reversed the decree of the Pulaski Chancery Court, the said J. H. Sanders had abandoned all claim to said property; the property was worth at the time $7,000, and in less than a year said John M. Davis sold said property for $6,750; that because of the fraud practiced the order of the probate court and the deed were void.

Appellee then sets out numerous other reasons for alleging that the orders of the probate court and the deed were void, but we deem it unnecessary to set out the complaint more fully.

Separate answer was filed by the Union Trust Company, Henry Levinson, and Mrs. Henry Levinson, denying the material allegations of appellee's complaint.

The following agreement was entered into:

"1. In this cause, it is agreed between the parties plaintiff and defendant:

"2. That Mr. R. E. Block, of Block Realty Company, 306 West Third Street, Little Rock, Arkansas, would testify in behalf of the plaintiff that he has been engaged in the real estate business, including real estate rentals, for more than twenty years prior to this date, and is personally familiar with the rental value of residence properties in the city of Little Rock throughout the years 1924-34, inclusive; also that his company was, for a part of the said period, the rental agent for the dwelling located at 101 Thayer Street, Little Rock, which is described as lot sixteen (16) of block four (4) of Capitol View Addition to the city of Little Rock, and, through the records of his office and reports made to him by the employees in his office, he considers himself well informed as to the rental value of the said property; and that, in his opinion, the fair and reasonable value there-

of for the time mentioned has been as follows: From October, 1924, to the fall of 1929, approximately $50 per month; from the fall of 1929 to the spring of 1932, approximately $37.50 per month; and from the spring of 1932 to the date of this stipulation, approximately $25 per month.

"3.  It is further agreed that the defendant Henry Levinson, and those under whom he claims, have held possession and control of the said property since October 24, 1924.

"4.  It is further agreed that the public records of Pulaski County show that the defendants, or those under whom they claim have paid general and special taxes against the said property, as follows:

"General taxes for the years 1924-1929, inclusive...$452.72
    (All paid before May 24, 1930)
"Broadway Bridge for the years 1925-1930, inclusive .................................................................................... 67.26
    (All paid before May 24, 1930)     .
"Street Improvement District No. 413 for 1925-1931, inclusive ............................................................... 406.70
    ($290.50 paid before, $116.20 paid after May
       24, 1930)
"Street Improvement District No. 373 for 1924-1931, inclusive .................................................................... 8.96
    ($7.84 paid before, $1.12 paid after, May 24,
       1930)
"Sewer District No. 94, for 1924-1931, inclusive... 47.60
    ($44.20 paid before, and $3.40 paid after, May
       24, 1930)

                    Total.......................................................................$983.24

"5.  It is further agreed that the defendant, Henry Levinson, would testify, in behalf of the defendants, that he has expended for insurance premiums upon said property the sum of $120.37, and for repairs the sum of $387.64.

"6.  It is agreed that this stipulation may be used in lieu of the testimony of witnesses and in lieu of the actual public records, but subject to correction if error be disclosed by comparison with the public record; and

subject to exception for incompetency, irrelevancy and immateriality, but not as to form. March 20, 1934.

"W. G. Riddick, attorney for defendants.

"Chas. B. Thweatt, attorney for plaintiff."

After hearing the evidence, the court entered a decree divesting all the right, title and interest of Union Trust Company, Henry Levinson and Mrs. Henry Levinson, out of them and vesting the same in the appellee, directing the immediate possession of said property to the appellee, and canceling the deed of Dr. Christian as guardian, and all proceedings of the probate court authorizing and confirming said sale and deed are set aside, canceled and held for naught.

The legal title to the property in controversy was in Allie V. Sanders, and the appellee was her adopted daughter, and inherited the property. Appellee testified that she thought she was about two years old when she was adopted, but the record shows that she was four. At the time Allie V. Sanders died, she was living on the property; it was her homestead, and appellee was living with her. After Mrs. Sanders' death, the appellee stayed for a while with Mrs. Sanders' sister. John H. Sanders then took her back to his home and kept her a while, and then put her in a convent, and a little later, in the Arkansas Children's Home.

The undisputed evidence shows that Dr. Christian was appointed guardian, filed a petition for the sale of appellee's interest, sold the interest at private sale, and executed and delivered a deed, all on the same day. No one except the parties in interest knew anything about it, because no notice was given, and the appellee, who was ten years old at that time, knew nothing about it.

Mr. Davis, the executor of the estate of J. H. Sanders, deceased, included in his inventory the property described, and no one connected with the proceedings in the probate court seemed to know anything about the title having been in Mrs. Sanders, although the slightest investigation would have disclosed that she was the legal owner. The deed was in her name and on record.

Appellants state that the chancellor denied the claim of fraud in the probate proceedings, but was of the opin-

ion that the sale was void as in effect a trial of title or compromise of a disputed claim. There is nothing in the decree to indicate this. The complaint charges fraud, and the decree simply finds for the plaintiff, and that she is the owner of lot 16, block 4, Capitol View Addition to the city of Little Rock, and that she is entitled to the rents accruing on said property after the date of the decree.

Appellant calls attention to §§ 181 and 5028 of Crawford & Moses' Digest. These sections simply provide that the judgment of the probate court is conclusive, provided it has the proper recitals, and that such judgments are not open to a collateral attack save for fraud or duress. This proceeding is a collateral attack upon the order of the probate court directing the sale of the minor's property, and the order approving and confirming said sale.

Attention is called to *Day* v. *Johnston,* 158 Ark. 478, 250 S. W. 532. There was no question of fraud in that case, and the court said: "The proceedings in the probate court appear to have been regular on their face. There are two separate and distinct proceedings directing the sale of the land, and every step leading to the sale was first directed, and later approved, by the court. The administratrix and the guardian reported the sale, and the court approved the report thereof. A deed was executed by the administratrix, and another by the guardian, and each of these deeds was approved." The court then states that it appears from the testimony of both the administratrix and guardian that at the time of their sales they were both residing in Missouri, and it appears from the face of the proceedings in the probate court that the land was sold privately. If there was any other defect in the sale, it is not pointed out.

In that case it appears that the law was complied with, that the property was appraised, and in fact no defect appears at all except that the administratrix and guardian were non-residents, and that the sale was private. In the instant case there was no notice given, no appraisement, and the appointment of guardian, petition for sale, the sale, and the report of sale and approval

thereof, and the deed by the guardian, was all on the same day. It could hardly be said that this was regular, as was said in the case referred to.

The attorneys in this case knew nothing about the facts except what they were told by Dr. Christian and Mr. Davis. Dr. Christian knew nothing about the facts except what Davis told him, and did not know that he was signing a deed. No one seemed to have enough interest in the minor to make any investigation, and, although the minor owned the property in fee, it was sold to Mr. Davis, executor of the J. H. Sanders estate, for $1,000, and he shortly thereafter sold it for $6,750. The probate court was led to believe from the petition that the property belonged to the John H. Sanders estate.

The petition for the appointment of guardian states that the minor has a disputed claim to an interest in certain real estate left by its adopted parents, and said child should have a guardian of its person and estate. This petition was sworn to. The petition of the guardian to sell the minor's property alleged that she was nine years of age, residing at the Arkansas Children's Home, that she had no property, and no interest or title to any property either real or personal having any realizable value other than the claim herein petitioned to be sold. The petition also alleges that the minor was regularly adopted by J. H. Sanders and Allie V. Sanders, and further alleges, not that Allie V. Sanders was the owner of the property described, but that said J. H. Sanders and his wife, Allie V. Sanders, were the owners. Under these allegations the probate court was advised that Allie V. Sanders did not own this property, but that both of them owned it, and she having died first, the property became the property of her husband, J. H. Sanders. This was not true, and the slightest investigation would have disclosed the truth. If it had been true, appellee would not have been the owner of the property.

Persons, in order to be guilty of legal or constructive fraud, or, as it is sometimes called, fraud at law, do not necessarily have to be guilty of moral wrong, but a constructive fraud is a breach of either legal or equitable duty which, irrespective of moral guilt of the

fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or injure public interests. Neither actual dishonesty of purpose nor intent to deceive, is an essential element of constructive fraud. 26 C. J. 1016 and cases cited.

We think it was unquestionably the duty of the parties to know something of the interest of the minor before they undertook to dispose of all the property she had, which was of the value of approximately $7,000.

Appellant next refers to the case of *Sullivan* v. *Times Publishing Co.*, 181 Ark. 27, 24 S. W. (2d) 865. That case simply holds that orders and judgments of the probate court are not open to collateral attack, and the question in this case was not involved there.

Judgments procured by fraud, whether actual or constructive, are always open to collateral attack in the chancery court. The probate court is a court of superior jurisdiction, and, when acting within its jurisdictional rights, its judgments are not open to collateral attack, if they contain the proper recitals, and were not procured by fraud; but, if they show on their face that the statute was not complied with, or it is shown that the judgment was procured by fraud or duress, they are open to collateral attack.

The undisputed evidence in this case shows that this property was the homestead of Allie V. Sanders, and on her death, it was the homestead of appellee.

Section 5524 of Crawford & Moses' Digest reads as follows: "The homestead provided for in the Constitution shall inure to the benefit of the minor children, under the exemptions therein provided after the decease of the parents." While the statute authorizes the probate court to order the sale of the homestead of the minor, the statute as to the manner of conducting the sale must be complied with.

Section 5038 of Crawford & Moses' Digest reads as follows: "When real estate of minors is ordered to be sold under the provisions of the last preceding section, such sale shall be advertised and conducted in the same manner as now provided by law for advertising and con-

ducting sales of real estate of deceased persons, made by executors and administrators, for the payment of debts.''

It will be observed that the manner of advertising and conducting the sale is the same as that for sales of real estate of deceased persons made for the payment of debts.

Section 153 of Crawford & Moses' Digest provides, in the sale of real estate to pay debts, that the executor or administrator must apply to the court of probate by petition, describing said lands and containing a true and just account of all the debts of the testator or intestate, etc. There is nothing in the petition showing whether there are any debts of the minor. There is nothing in the petition showing that the property was appraised, and it must have been appraised to make the sale legal.

Section 5039 of Crawford & Moses' Digest provides that no real estate of any minor shall be sold for less than three-fourths of its appraised value. It was not appraised, and did not sell for one-sixth of its real value.

There is nothing in the probate court proceedings anywhere, either in the petition for an order for sale or in the judgment, or in any of the records showing that there was an appraisement, or showing that the property belonged to the minor and was her homestead. It is true that the appellee, after the death of Allie V. Sanders, left the homestead, but we said in a recent case: ''A minor, being under disability, cannot waive his right to a homestead during minority. He can neither waive nor abandon his homestead rights. So that, at the time Merrill v. Harris was decided, it was settled in this State that, under the Constitutions of 1868 and 1874, the probate court had no jurisdiction to order the sale of a homestead of a deceased person for the payment of his debts during the minority of his children, or so long as his widow remains unmarried and does not abandon it, or shall not be the owner of a homestead in her own right. During this time the homestead is exempt from sale for the payment of the debts of the deceased owner. The order of sale in such cases is void.'' *Hart* v. *Wimberly*, 173 Ark. 1083, 296 S. W. 39.

It is true that the sale in the present case is said to have been for the education of the minor, who was at that time an inmate of the Arkansas Children's Home; but she owned this property, it had a rental value, and there was no necessity for the sale to educate the minor. It was her homestead, and was not subject to sale to pay debts.

We recently said: "In the application of this rule we think the record of the probate court in the matter of selling the minor's homestead upon the application of the guardian should show the fact that there were no other debts, and, the record being silent on that point, the order of sale was void." Ex parte *Tipton*, 123 Ark. 389, 185 S. W. 798.

We also said in the case last cited: "Purchasers at such sales as well as at administrator's sales are required to take notice of the rights of the minors, and for like reason it may be said that creditors must take notice of the rights guaranteed the minors by the Constitution, and it is not likely that a sale of the homestead could be made without their knowledge."

It is next contended by appellant that the probate proceedings cannot be regarded as a trial of title to real property. There does not seem to have been a trial of anything in the probate court. The parties agreed, evidently, before they went to the court, had all the papers prepared, and the papers presented to the probate court showed that the property belonged to the estate of J. H. Sanders, deceased, which estate was hopelessly insolvent.

It is insisted that Levinson and his predecessors were innocent purchasers. Levinson and his predecessors were bound to take notice of the deeds in the chain of title. They were bound to know from the deed to Allie V. Sanders that the legal title was in her during her lifetime. They were bound to take notice that the guardian's deed was a deed to the interest of the minor. They were bound to take notice from that deed that there was a sale of the minor's property. It was their duty to inquire into and ascertain the facts. If they had done this, they were bound to have discovered that the prop-

erty belonged to appellee. They were therefore not innocent purchasers. *Madden* v. *Suddarth,* 144 Ark. 79, 221 S. W. 457; *Star Lime & Zinc Mining Co.* v. *Ark. National Bank,* 146 Ark. 246, 225 S. W. 322; *McLaughlin* v. *Morris,* 150 Ark. 347, 234 S. W. 259.

It is finally insisted that the court erred in its decree on accounting for rents and profits. This was a question of fact, and we cannot say that the chancellor's finding was against the preponderance of the evidence.

We find no error, and the decree of the chancery court is affirmed.