RUSHING *v.* HORNER.

Opinion delivered May 28, 1917.

1. HOMESTEAD—EXCHANGE FOR OTHER LANDS.—A probate court can not authorize a guardian to exchange the homestead lands of a ward for other lands.

2.   HOMESTEAD—SALE—DEBT—VALIDITY.—The probate sale of a minor's homestead by the guardian is absolutely void if the estate is in debt at the time.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; reversed.

*Hogue & Heard,* for appellants.

1.   The sale of the homestead was void, because the court had no jurisdiction to order or approve the sale. 65 Ark. 355. The interest of the minors was too indefinite and uncertain for the court to determine its value, or what price it should bring. The estate was in debt; the widow was alive and had not abandoned her interest.

2.   Mrs. Rushing's testimony makes a clear case of unmistakable fraud. 1 Story Eq., § 187; 34 Wis. 105; 89 Ark. 168; 47 *Id.* 445; 37 *Id.* 316; 51 *Id.* 335. Her testimony is corroborated by the records that the payments credited were not made.

3.   The probate court was imposed on in obtaining the order and confirmation. The transaction was an exchange of the minor's homestead for other lands. This can not be done. 95 Ark. 256; 47 *Id.* 460.

4.   A guardian, upon sale of his ward's property, can not receive anything except money in payment, and if he attempts so to do, and afterwards fails to account for and pay over in money the proceeds of such sale, the ward may maintain an action against the purchaser for the purchase money, or set aside the sale. 63 Ind. 129; Perry on Trusts, § 835.

5.   It was, in law, a fraud on the part of the guardian (11 S. C. 551). The purchaser is liable for the full value of the property. 34 Ark. 451; 1 White & Tudor's Leading Cases in Eq., p. 59.

*C. Floyd Huff,* for appellees.

1.   The chancellor's findings here are clearly sustained by the evidence. 92 Ark. 35.

2.   The burden of proof was on appellants. All the parties are dead except Mrs. Rushing and she is not corroborated. If there was any conspiracy she was *parti-*

*ceps criminis.* Death has closed the lips of one party and the law seals the mouth of the other, and we doubt if Mrs. Rushing's testimony is competent. In many particulars it is shown to be false. The order was regularly obtained; the sale was necessary for the support and maintenance of the minors; the land was duly appraised and sold for an adequate price; the sale was confirmed and the notes paid. No fraud is shown and the decree should be affirmed.

HUMPHREYS, J. Appellants instituted suit in the Garland Chancery Court against appellees to set aside an order of the probate court to sell lot 15, block 54, in the second subdivision of the Hot Springs Land & Improvement Company, in the city of Hot Springs, Arkansas; and to cancel all the proceedings appertaining thereto, and conveyances made thereunder for the alleged reasons:

First, because the probate court had no jurisdiction to order or approve the sale.

Second, because the sale was procured by fraud.

Third, because the transaction was an exchange of other property for the homestead.

An agreement was reached by which the Scott-Mayer Commission Company was to retain its lease on said property during the lease term, by paying the rent into the registry of the court. By this agreement, said company was eliminated from the litigation.

The widow and children of John J. Horner, deceased, filed answer, denying all the material allegations of the bill.

The cause was heard by the chancellor upon the issues joined and proof adduced from which he found that the probate court had jurisdiction to order and confirm the sale; that the homestead was not traded for other property; and that the sale was not induced by fraud or collusion.

The bill was dismissed for want of equity on the 17th day of August, 1916, from which an appeal has been prosecuted to this court.

The property involved in this suit was the homestead of W. W. Rushing, at the time of his death, which occurred on December 20, 1898. Said property was assigned to the widow and appellants as a homestead, and another piece of real estate valued at $1,100 was assigned to the widow as dower in the landed estate of her deceased husband. The widow, Sarah A. Rushing, was appointed guardian for appellants on the 16th day of October, 1899. She procured an order to sell the homestead on the 29th of August, 1900, for the maintenance and education of appellees. In pursuance to said order, the property was sold at public sale to John J. Horner, husband and father of appellees, for $2,050, evidenced by two notes of $1,025 each, payable, respectively, in three and six months. On the 24th of December thereafter, deed was made by the guardian to the said Horner, reciting consideration of $1,025 cash and note for $1,025, due May 23, 1901. The deed contained a rental clause for the interest of Sarah A. Rushing in the homestead. On the same date Sarah A. Rushing executed a quitclaim deed for her interest in the homestead to the said Horner for an expressed consideration of $500.00. Col. John M. Harrell, conceded to be an attorney of reputation above reproach, was the attorney who directed and counseled the guardian. He prepared the guardian's deed and entered the following payments upon the two notes aforesaid:

"This note credited with a cash payment of five hundred and seventy-one ($571.00) dollars." (This credit appears on the face of the first note just above the signature of the maker, J. J. Horner).

"Hot Springs, Arkansas, November 28, 1900.

"Received from J. J. Horner this day $600 to be credited on these notes in addition to credit on face hereof.
                    S. A. Rushing, Guardian."

(This credit appears on the back of the note).

"Credit received November 28, 1900 on the within note $146.00, which is that much of the sum of $600 in-

dorsed on the first note credited on this note, leaving due $879.00.''

(This credit appears on the face of the second note just above the signature of the maker, J. J. Horner).

''Received the amount of within note, payment in full, this December 28, 1900.''

(This credit appears on the back of the second note).

John J. Horner died on the 3d day of August, 1905. On the 25th day of February, 1905, the court house and the papers in the case burned. The record proper was saved, which disclosed that the order of sale was made by proper application and on notice in the manner provided by law; and that the sale was confirmed by the court. Col. J. M. Harrell has since died. Mrs. Rushing gave testimony in substance to the effect that she exchanged the property in question for two lots described as follows: Lots forty-seven and forty-eight in block four, in what is known as Gains & Williamson's addition to the city of Hot Springs, and $800 in cash; that she was overreached and influenced to sacrifice the homestead property by J. J. Horner, under the advice and direction of Col. J. M. Harrell, who had been selected as her attorney by Horner.

Her evidence is not in accord with the records of the court, deeds, notes with credits thereon, and the bank records.

It is strenuously insisted by appellant that the sale and all proceedings thereunder should be set aside for fraud. The chancellor found against appellants on this issue. We have read the entire record very carefully and are of the opinion that the finding of the chancellor is in accord with the facts and circumstances. The evidence is too uncertain and conflicting upon which to base a finding of fraud. The immediate parties to the transaction are dead except Mrs. Sarah A. Rushing, who is the chief witness for appellants. The record evidence and circumstances in the case do not support her testimony. We

can not say the finding of the chancellor is contrary to a clear preponderance of the evidence on the issue of fraud.

(1)    It is also insisted that the sale is void because it is contrary to law for a probate court to authorize a guardian to exchange the homestead lands of a ward for other lands; and because this homestead was in part exchanged for other land.   The appellants are correct in their statement of the law.   In treating upon this question, this court said in *Gatlin* v. *Lafon,* 95 Ark. 256, "It (referring to the homestead) can not be lawfully exchanged for an interest in other lands to serve the same purpose."   We can not follow learned counsel for appellants in their conclusion that an exchange of property was made in the instant case.   The records of the probate court and the deed and notes executed in pursuance of the sale reflect the fact that the property was sold for $2,050.00, and paid for in money, not property.   The finding of the chancellor on this point was adverse to appellants and is not contrary to a clear preponderance of the evidence.

(2)    And lastly, it is insisted by appellants that the probate court had no jurisdiction to order the sale of the homestead.   The reason assigned is that the estate of W. W. Rushing, deceased, was in debt at the time of the sale of the homestead.   The latest expression of this court is to the effect that the probate sale of a minor's homestead by the guardian is absolutely void if the estate is at the time in debt; that in order to invest a good title in the purchaser at the guardian's sale, the record of the probate court should affirmatively show that the estate was free from debt; that the necessary essentials to give jurisdiction must appear on the record; that no presumptions can be indulged in favor of the judgment ordering the sale of a minor's homestead; that the burden rests upon the party asserting title under the sale to establish that the judgment ordering the sale of a minor's homestead recites the necessary essentials to give the court jurisdiction. *Tipton, Admr. Ex Parte,* 123 Ark. 389.

The judgment in this case ordering the sale of the homestead was burned and in order for appellees to sustain their title to the property it became necessary for them to establish that the judgment ordering the sale contained the jurisdictional recital that the estate of W. W. Rushing, deceased, was not in debt at the time the order for the sale of the homestead was made. No such showing appears. The evidence shows that the estate was in debt at the time the order for the sale of the homestead was procured. On this account, it will be necessary to reverse the decree of the chancellor.

There is some evidence in the case to the effect that extensive improvements were made upon this property by appellees. We are unable to determine, in the present state of the proof, the enhanced value of the real estate by reason of the improvements. Nor are we able to ascertain the rental value of the property in its improved condition, per month or per annum, beginning three years before the institution of this suit. It seems that the case was not fully developed with reference to rental value, net profits and betterments.

For the error indicated, the decree of the chancellor is reversed and the cause remanded for a new trial, with privilege to either party to make further proof.

McCULLOCH, C. J., (dissenting). Appellants are the assailants in this controversy, involving the validity of the judgment of the probate court directing the sale. Appellees hold under a deed executed by the guardian, pursuant to a sale made under the direction of the court, which deed is at least *prima facie* evidence of the validity of the sale. Kirby's Digest, § 3799.

In the absence of proof, the presumption ought to be indulged that the probate court found the existence of facts necessary to confer jurisdiction. The burden is, or ought to be, placed on the attacking party to show that the court did not have jurisdiction.

The decision in the present case is, I think, a far-reaching extension of the rule announced in *Tipton, Ex parte,* 123 Ark. 389, which strips the probate court of the

last vestige of presumption of regularity heretofore attending their judgments, when drawn in question collaterally.

SMITH, J., concurs.