## HART *v.* WIMBERLY.

## Opinion delivered February 28, 1927.

1. EXECUTORS AND ADMINISTRATORS—SALE OF MINOR'S HOMESTEAD.—Under the Constitution of 1874, art. 9, §§ 6, 10, sale of homestead of a minor by order of the probate court for payment of debts of the decedent is void for want of jurisdiction in the probate court.

2. COURTS—JURISDICTION OF PROBATE COURT.—Probate courts have only such special and limited jurisdiction as is conferred upon them by the Constitution and statutes, and can exercise only the powers expressly granted or necessarily incident thereto.

3. COURTS—JURISDICTION OF PROBATE COURT.—The Legislature cannot confer jurisdiction on the probate court to order the sale of the homestead of a minor to pay decedent's debts.

4. EXECUTORS AND ADMINISTRATORS—SALE OF MINOR'S HOMESTEAD.—An administrator has no power to sell a minor's homestead, subject to homestead rights.

5. EXECUTORS AND ADMINISTRATORS—SALE OF MINOR'S HOMESTEAD.—An order of the probate court authorizing the sale of a minor's homestead for payment of debts of the decedent is void *ab initio* and open to collateral attack.

6. EXECUTORS AND ADMINISTRATORS—SALE OF HOMESTEAD.—In the sale by an administrator, under order of the probate court, of land of the decedent, where the record fails to show that the land is not a homestead, the absence of such showing is sufficient to advise the purchaser that he acquired no title to a minor's homestead.

7. EXECUTORS AND ADMINISTRATORS—SALE OF MINOR'S HOMESTEAD.—An order of sale and confirmation by the probate court stating that the land to be sold was at the late residence of decedent is sufficient notice to the purchaser that the land was decedent's homestead.

8. EXECUTORS AND ADMINISTRATORS—SALE OF DECEDENT'S LAND.—In the sale of lands of a decedent, for the payment of his debts, the record must affirmatively show that the land is not the homestead of minors, before the probate court can have any jurisdiction to order a sale.

9. EXECUTORS AND ADMINISTRATORS—SALE OF MINOR'S HOMESTEAD.—One who purchases a minor's homestead at a sale for the payment of decedent's debts, is not protected because the proceedings appear regular for the sale of lands other than the homestead.

10. EXECUTORS AND ADMINISTRATORS—SALE OF MINOR'S HOMESTEAD.—The sale of a minor's homestead by the administrator to pay debts for the decedent, being void as not within the jurisdiction of

the probate court, was not cured by Crawford & Moses' Dig., §
181, as the Legislature cannot cure a proceeding made void by
the Constitution.

11. LIMITATION OF ACTIONS—RECOVERY OF HOMESTEAD BY MINORS.—The
right of action of a minor heir to recover his homestead sold by
the administrator during his minority is not barred by Craw-
ford & Moses' Dig., § 6946, where such minor was only 22 years
old when the suit was brought; the seven years' statute provid-
ing that action may be brought within three years after arriving
at majority being applicable.

12. INFANTS—ESTOPPEL.—Acceptance of minor heirs of their share
of the money left from the sale of a homestead, after paying the
debts of decedent, does not estop them from setting aside the sale
made during their minority as void.

Appeal from Clark Chancery Court; *C. E. Johnson,*
Chancellor; affirmed.

*J. H. & D. H. Crawford* and *McMillan & McMillan,*
for appellant.

*J. O. A. Bush,* for appellee.

McHANEY, J., (on rehearing).   Since this case was
originally submitted there has been a change in the per-
sonnel of this court, which has necessitated a reconsidera-
tion of the whole case on petition for rehearing, and a
majority of the court as now constituted agree to the
opinions herein expressed.   The principal question aris-
ing herein is the jurisdiction, or power, of a probate court
to order a sale of the minors' homestead for the payment
of debts.

In September, 1910, J. H. Wimberly died, a widower
and intestate, in Clark County, the owner of a rural home-
stead, with three minor children, Vivian, Dexie, and R. W.
Wimberly, age 14, 12, and 8 respectively, and owing some
small debts of no considerable amount.   On October 10
following, a neighbor, W. E. May, was appointed admin-
istrator, and duly qualified.   He thereafter, on October
19, 1911, applied to the probate court for an order to sell
the lands of his intestate, incorrectly describing them, for
the payment of debts probated against said estate, in
which petition he stated ''that the personal property
belonging to the said estate is not sufficient to pay the

debts.'' It is nowhere stated that the land described, for which a sale was asked, was the decedent's homestead, nor is any mention made of said minor children, but we assume that the application for letters of administration, which is not found in the record, correctly sets out the names and ages of such children. On the next day after the application was filed, October 20, the court granted the petition, and made an order directing the administrator "to sell the said land at the late residence" of deceased, on November 29, 1911, and to report his sale. Sale was had pursuant to the order, report was filed December 23 and approved, and deed ordered made to purchaser on payment of purchase price of $332.46 on January 15, 1912. Deed was made to M. B. Mullins, and, through mesne conveyances, to appellant, W. S. Hart. On a trial the court found all the facts against appellants, and decreed a cancellation of the sale above described and all subsequent deeds and deeds of trust in that chain of title as being void, and that appellees are the owners of said land; that appellants, Hart and Arkadelphia Milling Company, should pay R. W. Wimberly $100 for one-third value of timber cut, with interest, and that Evans, Stone and Wimberly recover from Hart and Nowlin-Carr Company $200, with interest, for oak timber cut, and that the said heirs recover from Hart $192 for pine timber sold to Marlar Lumber Company. The court set-off all claims of appellant Hart for taxes and improvements against the rents and profits. From the judgment against them Hart, Arkadelphia Milling Company and Nowlin-Carr Company have appealed.

The sale of the homestead of a minor by order of a probate court, for the payment of debts of the decedent, is void, as the probate court has no such jurisdiction. Such a sale is void for lack of jurisdiction under both the Constitution of 1868 and 1874. See art. 9, §§ 6, 10, Const. 1874; art. 12, §§ 3, 4, 5, Const. 1868. In the case of *Bond v. Montgomery,* 56 Ark. 537, 20 S. W. 525, 35 Am. St. Rep. 119, it is said:

"Under the Constitutions of 1868 and 1874 the probate court had and has no jurisdiction to order the sale of a homestead of a deceased person for the payment of his debts, during the minority of his children, or so long as his widow remains unmarried or does not abandon it, or shall not be the owner of a homestead in her own right. During this time the homestead is exempt from sale for the payment of the debts of the deceased owner. The order of sale in this case was therefore an absolute nullity."

In *Slayton* v. *Halpern,* 50 Ark. 330, 7 S. W. 304, Chief Justice COCKRILL said:

"The policy of exempting the homestead from sale after the death of the debtor for the benefit of the widow and minor children was continued by the Constitution of 1874, without abating the right as jt existed under the Constitution of 1868 and the act of 1852."

In *Ex parte Tipton,* 123 Ark. 392, 185 S. W. 799, it is said:

"(4). A minor, being under disability, cannot waive his right to a homestead during minority. He can neither waive nor abandon his homestead rights. So that, at the time *Merrill* v. *Harris* was decided, it was settled in this State that, under the Constitutions of 1868 and 1874, the probate court had no jurisdiction to order the sale of a homestead of a deceased person for the payment of his debts during the minority of his children, or so long as his widow remains unmarried and does not abandon it, or shall not be the owner of a homestead in her own right. During this time the homestead is exempt from sale for the payment of the debts of the deceased owner. The order of sale in such cases is void."

Probate courts have "only such special and limited jurisdiction as is conferred upon them by the Constitution and statutes, and can only exercise the powers expressly granted and such as are necessarily incident thereto," as was said in *Lewis* v. *Rutherford,* 71 Ark. 218, 72 S. W. 373; *Beakley* v. *Ford,* 123 Ark. 383, 185 S. W. 796; and neither by the Constitution nor the statutes

have they been given any such power. Indeed, the Legislature could not confer jurisdiction on such courts, as it would be in direct conflict with the Constitution.

In *Griffin* v. *Dunn,* 79 Ark. 410, 96 S. W. 191, the court said:

"The sale of the homestead by the administrator was void, because the court has no jurisdiction to order it."

There is no provision anywhere in the law of this State for an administrator to sell a minor's homestead while a minor, for any purpose. The guardian may sell his minor ward's homestead for support and education, when necessary (*Merrill* v. *Harris,* 65 Ark. 355, 46 S. W. 538, 41 L. R. A. 714, 67 Am. St. Rep. 929), but the administrator cannot do so. The administrator cannot sell the homestead subject to the homestead rights. *Griffin* v. *Dunn, supra; McCloy* v. *Arnett,* 47 Ark. 445, 2 S. W. 71; *Stayton* v. *Halpern, supra; Nichols* v. *Shearon,* 49 Ark. 75, 4 S. W. 167; *Bond* v. *Montgomery,* 56 Ark. 563, 20 S. W. 525.

In *Neely* v. *Martin,* 126 Ark. 6, 189 S. W. 104, it is said:

"At the time of the sale of the land in suit by the administrator of Jesse Martin, to pay the debts of his estate, these lands constituted the homestead of his minor children, and the sale was therefore void." *Rushing* v. *Horner,* 130 Ark. 26, 196 S. W. 468; *Johnson* v. *Taylor,* 140 Ark. 106, 215 S. W. 162; *Turner Heirs* v *Turner,* 141 Ark. 51, 216 S. W. 44.

Counsel for appellants substantially concede that the foregoing is correct, but contend that, the statute for the sale of *land* to pay debts having been complied with, and the sale approved by the court, the order of the probate court is not open to collateral attack. A complete answer to this is that there is no statute and could not be for the sale of land which is a homestead for the payment of debts. The order of the probate court is void *ab initio.* It is *coram non judice,* and is therefore open to collateral attack. A void judgment or order may be attacked col-

laterally  *Waggener* v. *Lyles,* 29 Ark. 47; *McDonald* v. *Ft. S. & W. Rd. Co.,* 105 Ark. 5, 150 S. W. 135; *Dalton* v. *Bradley Lumber Co.,* 135 Ark. 392, 205 S. W. 695. There is some authority for holding that an action to obtain a decree declaring a judgment void *ab initio* is not a collateral attack. *Hooper* v. *Wist,* 138 Ark. 294, 211 S. W. 143, citing 15 R. C. L. 838, par. 311; *Stumpff* v. *Louann Provision Co., ante,* p. 192. Moreover, this contention of counsel is contrary to the decision of this court in *Beakley* v. *Ford, supra,* where it is said:

"The order of the probate court under review contains no recitals that would bring it within the exercise of the jurisdiction conferred upon it by the statute. The probate court having no such common-law jurisdiction, and proceeding solely by virtue of statutory authority, its jurisdiction to exercise such authority must appear from the record, and will not be presumed. *Gibney* v. *Crawford,* 51 Ark. 34, [9 S. W. 309]; *Hindman* v. *O'Connor,* 54 Ark. 627-43, [16 S. W. 1042]; *Morris* v. *Dooley,* 59 Ark. 483-87, [28 S. W. 30]; *St. L. I. M. & S. R. Co.* v. *Dudgeon,* 64 Ark. 108-10, [40 S. W. 786]. See also *Willis* v. *Bell,* 86 Ark. 473, [111 S. W. 808]."

In the case of *Ex parte Tipton,* this court said:

"In the application of this rule we think the record of the probate court in the matter of selling the minor's homestead upon the application of the guardian should show the fact that there were no debts, and, the record being silent on that point, the order of sale was void."

It must therefore appear from the record that the land of the decedent which is to be sold to pay debts is other than the homestead, and, this not appearing, was sufficient to advise a purchaser that he acquired no title. It appears from the order of sale and confirmation that the land to be sold was "at the late residence of J. H. Wimberly," which would be notice that it was his homestead. But that is unimportant, since it must affirmatively appear on the record that the land proposed to be sold for debts is not the homestead of the minor before the probate court can have any jurisdiction at all. A pur-

chase of a minor's homestead at a sale for the payment of debts cannot be protected because the proceedings appear regular for the sale of lands other than the homestead.

The main contention of counsel for appellant seems to be that this case comes within the curative provisions of the act of March 12, 1919, § 181, C. & M. Dig., as construed in *Day* v. *Johnson,* 158 Ark. 478, 250 S. W. 532, and *Collins* v. *Harris,* 167 Ark. 372, 267 S. W. 781. Neither of these cases involved the sale of a minor's homestead for the payment of debts. In *Day* v. *Johnson* the minor's homestead was not involved, as the land sold was not his homestead, and the effect of the holding in that case is that irregularities in the sale of a minor's lands for his education, when the sale is confirmed, are not open to collateral attack, and will be cured by the above statute. In *Collins* v. *Harris* the sale of the minor's homestead was involved, but by the guardian and not the administrator, and was "for the support, education and maintenance" of the minor, and not to pay debts, and it was there held that the act of 1919, above referred to, cured the defect in the petition in failing to allege that there were no debts due and unpaid by the deceased parent at the time of sale, as had been the ruling of this court prior to the passage of said act. It will therefore be seen that these decisions in no way conflict with the former decisions of this court on the jurisdiction of the probate court to order the sale of a minor's homestead to pay debts. The act of March 12, 1919, could not have the effect of amending the Constitution, as would be the result if the contention of counsel is correct. The Legislature cannot cure a proceeding made void by the Constitution, and no act that it passes can breathe vitality into a thing that is dead. The Legislature cannot do indirectly a thing directly prohibited by the Constitution.

The next question is the period of limitation, the contention being this action is barred by the five-year statute, § 6946, C. & M. Digest. The exact question was

before this court on a like state of facts in *Kessinger* v. *Wilson*, 53 Ark. 400, 14 S. W. 96, 22 Am. St. Rep. 220, where Mr. Justice BATTLE, for the court, said:

"The land was set apart by the law to appellants, when their father died, as a home and means of maintenance during their minority. Until the younger of them reached the age of twenty-one years it could not have been lawfully sold to pay the debts of their father's estate or partitioned between them. *Nichols* v. *Shearon*, 49 Ark. 75, 4 S. W. 167; *Kirksey* v. *Cole*, 47 Ark. 504, 1 S. W. 778. It was not subject to sale, but might have been rented to raise means for their support. Until the younger reached his majority, it remained set apart as 'a place, a sanctuary, to which he or she might return to find shelter, comfort and security of a home' during his or her minority. As an entire homestead it remained the home of both. Although the land constituting it descended to them subject to be sold to pay the debts of their father's estate, it could not have been lawfully severed or diverted from the full occupancy and enjoyment by both of them as a home during the minority of either of them. Their homestead right was like a joint tenancy with right of survivorship. As each of them arrived of age, his interest in it expired. After the older reached her majority, the younger was entitled to the exclusive use and enjoyment of the land as a home until he became twenty-one years old, and then both became entitled to have and to hold as tenants in common, subject to the right of the administrator of Daniel Kessinger to have it sold to pay Kessinger's debts. *Kirksey* v. *Cole*, 47 Ark. 504, 1. S. W. 778. The homestead right or estate and the estate inherited in addition thereto were like two separate and distinct estates vested in different persons and following in immediate succession. Their right to the enjoyment and possession of the same did not exist at one and the same time, and neither merged in the other. The former did not merge in the latter; for, in that event, the minor children would have lost the right to enjoy the homestead during their minority, and the land constituting it would have imme-

diately become subject to sale for the payment of the debts of their father's estate, it being insolvent, and the quality of the homestead, like unto a joint tenancy, would have been changed by severance to tenancy in common. Greenleaf's Cruise on Real Property, vol. 6, marginal page 484, and cases cited. And the estate inherited from their father, being the larger, could not merge in the homestead. So they remained separate and distinct. As they could not have been held otherwise, appellants necessarily had two rights of entry upon the land, one when they became entitled to the homestead, and the other when the younger was twenty-one years old.

"The homestead right has expired, and the right to the possession of the estate inherited in addition thereto has accrued. The time which expired before the last right of entry accrued did not affect it. The statute of limitations did not commence running against it until John Kessinger was twenty-one years old. The rule is, where there are two separate rights of entry, the loss of one by lapse of time does not impair the other. It has often been held that 'a remainderman expectant on an estate for life or years, who had a right to enter because of the forfeiture of the tenant, is not bound to avail himself of the forfeiture, and his neglect to enter at the time does not bar him of his entry on the limitation of the estate of efflux of time or the death of the tenant.' According to Plowden, in *Stowell* v. *Lord Zouch,* 1 Plowd. 374, where there were three separate rights in the same person, he was entitled to the benefit of all of them the same as though they existed in three different persons. The maxim of the law is, '*Quando duo jura concurrunt in una persona, aequum est acsi assent in diversis.*' "

Again he said:

"What statute prescribes the time within which an action for the recovery of the land must be brought after the last right of entry accrued? Appellees pleaded the five years' statute. That statute, as enacted, provides: 'All actions against the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the

revenue for the nonpayment of taxes, and for lands sold at judicial sales, shall be brought within five years after the date of such sale, and not thereafter; saving to minors, persons of unsound mind and persons beyond seas, the period of three years after such disability shall have been removed.' Is it applicable to this case?"

After a lengthy discussion of the authorities he answered the question as follows:

"The words of the statute are, 'All actions * * * shall be brought within five years after the date of such sale, and not thereafter.' It is clear that it commences to run from the date of sale, and not thereafter, as it declares. As it begins to run at the date of the sale, it is difficult to understand how it can bar an action when the cause of it did not arise until more than ten years after the sale had elapsed. The sustainment of a contention to that effect would lead to the absurd conclusion that all rights of action against the purchaser of land sold at a judicial sale, arising after the lapse of five years from the date of sale, are barred at the very instant the cause of action accrues. This would be equivalent to a denial of the right to be heard at all in the vindication of such rights. It is manifest that the statute was never intended to be applied in such cases, but that its object was to require all parties to bring suits against purchasers at judicial sales within five years after the date of sale, for the enforcement of only such rights to recover the land sold as can be enforced in an action brought within that time, and to bar the recovery of such rights in any suit brought thereafter. It has no application to this action. The only statute of limitation at all applicable to this case is the seven years' statute."

This case has been cited with approval in the following cases, many of them relating to sale of the minor's homestead: *Duke* v. *State*, 56 Ark. 468, 20 S. W. 600; *Gates* v. *Kelsey*, 57 Ark. 526, 22 S. W. 162; *Finley* v. *Hogan*, 60 Ark. 502, 30 S. W. 1045; *Killeam* v. *Carter*, 65 Ark. 70, 44 S. W. 1032; *Collins* v. *Paepcke-Leicht Lbr. Co.*, 74 Ark. 87, 84 S. W. 1044; *Gavin* v. *Ashworth*, 77 Ark.

244, 91 S. W. 303; *Griffin* v. *Dunn,* 79 Ark. 411, 96 S. W. 190; *Martin* v. *Conner,* 115 Ark. 365, 171 S. W. 125; *Krow & Neumann* v. *Bernard,* 152 Ark. 110, 238 S. W. 19.

Since the youngest child, R. W. Wimberly, was only 22 years old when this suit was brought, it necessarily follows, from what we have said and from the foregoing authorities, that the action is not barred as to any of the heirs for the recovery of the land, the seven-year statute being applicable, which provides the action shall be brought within three years after arriving at age of twenty-one years.

Neither can the doctrine of estoppel be invoked by appellant from the fact that, while yet minors, two of them were paid their share of the money left from the sale of the homestead after paying the debts, and deposited with the clerk by the administrator. It would be a weak safeguard of the minor's homestead rights if the constitutional and statutory protection thrown around such rights could be destroyed by estoppel, as is claimed here.

We have examined the other questions raised, including the claim for betterments, and have reached the conclusion that the chancellor's decision is not against the preponderance of the evidence. He offset the taxes and improvements against the rents and profits, on conflicting evidence, and we are unable to say he was wrong in so doing. No error appearing, the decree is affirmed.

SMITH, J., (dissenting). With all deference to the opinion of the majority, it appears to me that they proceed from the fundamentally false premise that the probate court is a court of special jurisdiction, acting in the discharge of special powers, which makes it necessary that its right to act affirmatively appear from the face of its proceedings.

One of the landmark cases in our reports is that of *Borden* v. *State,* 11 Ark. 519, 44 Am. Dec. 217. After there laying down the rule, which has since been consistently followed, declaring the presumption of verity to be indulged in favor of the judgments and decrees of supe-

rior courts, the learned judge who wrote that opinion said: "The remaining question before us in this case is whether or not the probate court is to be regarded as a superior court within the principles laid down. We answer emphatically that in our opinion it must be so considered. Because it is not only a court of record, but a constitutional court of fixed and permanent character invested with general jurisdiction and plenary powers over the matters committed by law to its peculiar cognizance and open to review by appeal. There is abundant authority thus to hold as to this court, and, if there was not, it would be a matter of serious public concern. Because, while in point of law it is equal, in point of fact it is a more important court to the people of this State than the circuit court. And this will be manifest at once when it is considered that it only requires a period of about forty years to pass every atom of property in the State, real and personal, and many choses in action, through the ordeal of the probate court; while it is estimated that the whole would not be passed through the circuit court in an entire century. We feel freely warranted therefore, not only on the score of authority, but for cogent reasons of public policy, to fix this court upon the footing of superior courts. 11 Serg. & Rawle 429; 5 Cranch 173; 2 Howard S. C. R. 340; 6 Peters R. 220."

The doctrine of that case has been many times since recognized, and the opinion in the case of *Apel* v. *Kelsey*, 52 Ark. 341, 12 S. W. 703, was based upon the recognition of the fact that the probate court was a superior court in favor of whose judgments a presumption of verity must be indulged when collaterally attacked.

The facts in the Apel case were that, in disregard of the mandatory provision of the statute that an administrator give notice of the sale of his interstate's lands in accordance with the provisions of law, an administrator had sold these lands at a private sale. There was no authority in the law for this action. On the contrary, it was done in violation of the provisions of a mandatory statute, yet the sale was confirmed, and when collaterally

attacked it was upheld for the reason there stated that: "It is impossible upon principle to distinguish the question here presented from those so often decided heretofore; and in obedience to the settled doctrine of this court, fixing the character of the probate court, and the effect of its judgments, we hold that a private sale of land by an administrator, upon order of that court, is not void when confirmed."

Full recognition was thus given to the impervious character of probate judgments and orders against collateral attack, for the reason that those courts were superior courts, which exercised a jurisdiction conferred by the Constitution.

The case of *Day* v. *Johnston,* 158 Ark. 478, 250 S. W. 532, reviews the legislation which resulted from that decision. It was there pointed out that, in delivering the opinion in *Apel* v. *Kelsey, supra,* Justice SANDELS had deprecated the state of the law growing out of the prior decisions of the court, which had become rules of property, and the aid of the Legislature was invoked to change the rule giving the same verity to the judgments of probate courts as was given to the judgments of other courts of record. Acting upon this suggestion the next session of the Legislature passed an act entitled, "An act to protect the estates of minors from loss" (Act 106, Acts of 1891, page 189), which provided that "All probate sales of real estate, made pursuant to proceedings not in substantial compliance with statutory provisions, shall be voidable."

In the case of *Mobbs* v. *Millard,* 106 Ark. 563, 153 S. W. 821, the word "voidable" appearing in this act was construed to mean void.

While this act was the law, the cases of *Beakley* v. *Ford,* 123 Ark. 383, 185 S. W. 796; *Ex parte Tipton,* 123 Ark. 389, 185 S. W. 798, and *Rushing* v. *Horner,* 130 Ark. 21, 196 S. W. 468, were decided.

The case of *Day* v. *Johnston, supra,* pointed out that the act of 1891 had changed a rule of property announced

in the *Apel* v. *Kelsey* case, and that the act of March 12, 1919 (General Acts of 1919, page 193), entitled, "An act to render conclusive judgments and decrees of the probate court in guardians' and administrators' sales," had re-enacted the rule of property as announced in the Apel case, and the right to change the rule by act of the Legislature was declared in the *Day* v. *Johnston* case, where we said: "We gave effect to one act, and we perceive no reason why we should withhold giving effect to the other; and, when we have given it effect, we must hold that the judgments of probate courts become impervious to collateral attack, if they contain the jurisdictional recitals which the General Assembly has determined are essential to constitute a valid sale against collateral attack."

The question here presented is not, whether the homesteads of minors are exempt from sale for the payment of the debts of their ancestors, but is, whether it is within the power of the General Assembly to clothe the judgments of probate courts with an incontrovertible presumption in cases where the Constitution has conferred jurisdiction.

The probate court is a superior court, with a jurisdiction defined by the Constitution, giving it the control of the estates of deceased persons, and the Legislature has the power to clothe the judgments of that court with absolute verity on collateral attack where it has acted within its jurisdiction. Such is the essence of the opinions in the cases of *Apel* v. *Kelsey* and *Day* v. *Johnston,* and the other cases to which they refer. See also *Collins* v. *Harris,* 167 Ark. 372, 267 S. W. 781.

It is not questioned by the majority that the provisions of the act of 1919 apply to the sale here under review if they can be made to do so. The sale here attacked contains the recitals required by the act of 1919 to make the curative quality of that act applicable, but the majority say the act cannot cure a sale of a homestead for the payment of the intestate's debts because the Constitution exempts the homestead from such sale.

It does not appear from the face of the record before us that the land sold comprised the homestead of the debtor and was sold in payment of his debts. It does appear that the court order fixed the place of sale at the "late residence" of the intestate, but it does not affirmatively appear that this residence was a part of the land ordered to be sold. Besides, a residence is not necessarily a homestead. The presumption, therefore, might well be indulged that in ordering the sale the probate court had found that the land ordered to be sold did not comprise a homestead, and such a presumption must necessarily be indulged if we are to give the same presumption of verity in favor of probate judgments as is indulged in favor of the judgments of other superior courts.

The majority recite and rely upon *Waggener* v. *Lyles,* 29 Ark. 47, and other similar cases. In the Waggener case it was said: "The objection to the validity of the proceedings of the probate court are not that the court has acted in excess of its powers, or that some act necessary to perfect its jurisdiction has not been complied with; but that the subject-matter submitted to it was one of which it could take no jurisdiction whatever; and when such is the case, whether in collateral or direct proceedings, the fact being apparent upon the record, such orders and proceedings are treated as nullities."

There is no question about the jurisdiction of the probate court over the estate. It not only had jurisdiction, but it had exclusive jurisdiction, and upon the proper showing could have ordered a sale of the land. It may have improperly ordered the sale of the land. It might erroneously have found that the land was not a homestead, or that the minors had come of age, but it had the jurisdiction to determine these facts and its finding was not in excess of its jurisdiction.

In the case of *Blanton* v. *Forrest City Mfg. Co.,* 138 Ark. 508, 212 S. W. 330, it was said: "In determining the validity of a judgment upon collateral attack, a distinction must be observed between those facts which involve

the jurisdiction of the court over the parties and subject-matter and those *quasi* jurisdictional facts without allegation of which the court cannot properly proceed and without proof of which a decree should not be made.''

Here the probate court had jurisdiction of the parties and of the subject-matter. It should not have ordered the sale of the homestead to pay debts, but it does not appear from the face of the record that it did so. The presumption should therefore be indulged that the court made such a finding of fact as warranted the order made, although it now appears that the court was in error in its finding upon the facts upon which the jurisdiction was exercised.

The testimony in the record now before us does not show that the probate court acted upon a matter in connection with a subject of which it could not take jurisdiction, but only that its action was premature or upon an erroneous finding of fact, but neither the prematurity of its action nor the error in the finding of fact affirmatively appears from the order attacked. The action of the court in prematurely exercising its jurisdiction or in erroneously finding the facts was an error to be cured on appeal, and was not such an inherent defect or lack of power as to render the order of the court subject to be collaterally questioned, as it emanated from a court of superior jurisdiction, acting within its jurisdiction.

It does not appear therefore that the action of the court in ordering the sale of the land was *coram non judice.*

The majority say that the youngest child of Wimberly, the intestate, was only twenty-two years old when the suit was brought, and he was not therefore barred by limitation. The exact age of this youngest child, as shown by his own testimony, at the time of the institution of this suit, was twenty-two years and five months. Five months more than one year had therefore elapsed after this youngest child came of age before the institution of this suit, and he, as well as the other heirs, should be held barred by the act of 1919.

Section 1 of this act reads as follows: "That, in all guardians' and administrators' sales heretofore or hereafter made, the finding and recital in the judgment or decree of the probate court authorizing and ordering any such sale, that the guardian or administrator was duly and legally appointed and qualified, that the sale was conducted according to law, and that the facts set forth in the petition entitled the said guardian or administrator to make the said sale, shall be conclusive and binding on all parties having or claiming an interest in the said sale, save upon direct appeal to the circuit court, made in such cases as are now provided by law; and such finding and judgment or decree of the probate court shall not be open to collateral attack, save for fraud or duress. Provided that, as to sales heretofore made, all parties having any interest therein shall have twelve months after the passage of this act in which to attack such sales."

In the case of *Day* v. *Johnston, supra,* we said that: "The act, in so far as it relates to sales heretofore made, might well be sustained as a statute of limitations, as a reasonable time (one year) was allowed after the act was passed in which an interested party could prevent the consequences of the act falling upon him. *Towson* v. *Denson,* 74 Ark. 302, 86 S. W. 661, and cases there cited to this point. *Cottonwood Lumber Co.* v. *Hardin,* 78 Ark. 95, 92 S. W. 1118."

Because of the fact, as was there pointed out, that the act applied to future as well as to past sales, we considered and passed upon the constitutionality of the act in the Day case, and held that it was constitutional.

The instant suit was not brought until long after the year had expired which the act allowed for suits to be brought to attack sales under orders and judgments of the probate court which contained the recitals declared by the act to be essential and sufficient to constitute a valid judgment, and, as there is no saving clause in favor of infants, they, as well as all others, would be barred after one year. But, in any event, it would appear that

the strictest construction of this act possible would be to hold that the year of limitation did not commence to run until the homestead estate had expired. *Kessinger v. Wilson,* 53 Ark. 400, 14 S. W. 96. But, as has been said, more than one year expired after the termination of the homestead estate before the institution of this suit, and, as the heirs and their vendees did not avail themselves of the saving clause in the act, they should be held barred by it.

For the reasons herein stated, I think the decree of the court below should be reversed; and I am authorized to say that Justices WOOD and KIRBY concur in the views here expressed.