HUFF *v.* HOT SPRINGS SAVINGS, TRUST AND GUARANTY COMPANY.

Opinion delivered January 25, 1932.

*C. Floyd Huff,* for appellant.

*George P. Whittington,* for appellee.

BUTLER, J. This case is presented on the record made in the probate court and in the circuit court on appeal, from which it appears that the Hot Springs Savings Trust & Guaranty Company was named as executor under the last will and testament of Miss Blanche Bell, who died prior to the 21st day of June, 1926, and that said company qualified and proceeded to act as such executor. At some time after the company began to function as executor, its attorney was informed by C. Floyd Huff, an attorney of Hot Springs, that he had in his possession some jewelry of the estimated

value of $691, as the agent of Margaret Huff, wife of C. Floyd Huff, Jr., which property had been given her by the testatrix in her lifetime; that the inheritance tax on this property would amount to $40, which Huff offered to give to the executor for use in the settlement of the inheritance tax due by the estate. Shortly after this a petition was filed in the probate court by the executor alleging that, after the filing by it of an inventory of the assets of the estate, it learned that C. Floyd Huff had in his possession certain property which was listed in the petition, and alleging that by the terms of the will all of the jewels belonging to the testatrix were bequeathed to Blanche Bell Washington and Edith Bell Alcorn. The petition further alleged that, from the estimated value of the property, an inheritance tax would be due the State amounting to $40, which sum the said Huff had tendered to the executor for payment to the State, but that he had refused to deliver the property to the executor. The prayer was for a citation upon the said Huff requiring him to submit himself to examination with respect to the possession, ownership and value of the property in question. This petition was filed on the 22d day of June, 1926, and the citation accordingly issued.

No further action was taken or pleading filed until the 25th day of May, 1927, when there was filed in said court the answer of C. Floyd Huff to the petition for citation, in which, among other things, he recited the facts heretofore stated with reference to the possession of the jewelry and alleged that he was in possession of the articles named in the petition which articles had been delivered to him by Margaret Huff in the lifetime of the testatrix, and that the said Margaret Huff was the owner of said jewelry, the circumstances on which her claim of ownership was based being set out in detail in the said answer. It was also alleged that the estate was making no claim to the jewelry, as under the terms of the will all of the jewelry of the executrix was bequeathed to

the before-named legatees who were claiming ownership of the same and were the real parties in interest.

Thereafter a petition was filed in the name of the said legatees in which the jewelry was described in detail, and, as in the petition first filed by the executor, that the allegation that the jewelry was in the possession of Margaret Huff who was concealing the same and refusing to deliver it to the executor. There was a prayer for a citation against Margaret Huff requiring her to appear in court and for an order requiring her to deliver the said property to the executor. This citation was duly served on Margaret Huff on the 31st day of May, 1927. It seems that Margaret Huff filed no written response to this petition, but on the 7th day of June, 1927, as shown by the order and judgment of the probate court, she appeared therein in person and by her attorney. The record recites that the executor also appeared by its president and attorney, and ''this cause is submitted to the court on the original citation issued herein against the said Margaret Huff, the answer of the said Margaret Huff thereto in which she claims ownership of the personal property involved, oral testimony taken in open court, and the argument of counsel,'' etc. The order further recited the description of the jewelry and found ''that it was the property of the testatrix prior to her death and is claimed by Margaret Huff as a gift from the deceased during her lifetime, and that there is no evidence submitted to the court to sustain the alleged gift except the testimony of the said Margaret Huff who claims the same, and that the said Margaret Huff is not a competent witness, being prohibited under the Constitution of the State of Arkansas from testifying, and the alleged gift has not been established by legal evidence.'' The court thereupon adjudged ''that the claim of the said Margaret Huff to the aforementioned personal property is denied, that said personal property is a part of the assets of the estate of the deceased, and the said Margaret Huff be, and she is hereby,

ordered to deliver the said personal property to the executor," etc. In the same order is a recital that "Margaret Huff filed her motion and affidavit for appeal to the Garland Circuit Court, and the appeal is granted."

On June 28, following, C. Floyd Huff and Margaret Huff filed their motion in the court to set aside its findings and order of June 7, 1927, directing that respondents then deliver possession of the jewelry to the executor, and as ground for the motion alleged "that this court was without jurisdiction to try the issue raised by the pleadings in this case as to the ownership of the articles in dispute, and that this court was without jurisdiction to make any order or render any judgment finding the ownership of the articles involved in this controversy." No further action was taken by the court or any of the parties to the proceeding until the 12th day of July, 1927, when the exceptions of the legatees were filed to the final account of the executor, in which they excepted to the approval of the account and the closing of the estate, assigning as a reason that the executor had not collected all of the estate left by the deceased, and that "there is now a claim of one Margaret Huff against the estate which has not been finally disposed of," etc.

The record discloses no further action by the court or parties to the proceeding until August 6, 1929, when the legatees filed a petition reciting the order of the court of June 7, 1927, and alleging that no appeal was taken from said order within the time prescribed by law, and that Margaret Huff had failed and refused to deliver the personal property to the executor, and that the petitioners (legatees) under the terms of the will were entitled to receive the property in her possession, and they prayed for an order citing Margaret Huff and C. Floyd Huff, Sr., to appear in court and show cause why they should not deliver the personal property to the executor or be adjudged in contempt for failure to do so. Following this petition appears the indorsement

of the judge of the court directing Margaret Huff to comply with the order of the court of June 7, 1927, and to deliver the personal property mentioned in said order to the executor, and upon this order a writ was issued under the hand and seal of the clerk of the court addressed to C. Floyd Huff, Sr., reciting the order made as of the 13th day of August, 1929, and directing him to deliver to the executor the jewelry in controversy. On this order was indorsed service made on the person named on August 13, 1929.

No action of the court appears to have been taken on the motion to set aside the judgment of June 7, 1927, filed June 22, 1927, until August 6, 1929, when a memorandum was entered on the docket of the judge of the probate court in which said motion was denied, but this order seems never to have been entered at length on the record of the probate court. On August 6, 1929, Margaret Huff and C. Floyd Huff filed "motion, prayer and affidavit for appeal" in which they prayed an appeal from the order of the court overruling their motion to set aside the order and judgment of June 7, 1927, and also from an order of the court of August 6, 1929, directing the respondent, Margaret Huff, to deliver to the executor the jewelry in controversy. The affidavit was made by C. Floyd Huff, and the appeal was lodged in the circuit court on September 21, 1929. Some other orders appear to have been made in the probate court which are not mentioned in the above recital, as they seem to be duplication of orders already made.

On June 20, 1931, the matter being reached on the call of the docket in the circuit court, a motion was filed to dismiss the appeal, and at the hearing the court found in substance the facts as above recited and dismissed the appeal as prayed "for the reason that the appeal from the original order and judgment of the probate court was not lodged and perfected in the time provided by law, and that said appeal be, and the same is hereby, dismissed, and that the said Margaret Huff and the said

C. Floyd Huff be, and they are hereby, ordered and directed to carry out the judgment of the probate court and deliver to the Hot Springs Savings Trust & Guaranty Company, executor of the estate of Blanche Bell, deceased, the subject-matter of this suit, etc.,'' from which order the Huffs have appealed to this court.

■ It will be seen from the dates of the various pleadings and orders hereinbefore recited that the cause was prosecuted with but little diligence by either party in the probate court, but, for some reason unknown to us, was suffered to drag along for more than two years. It is clear, however, that from the time of the response of C. Floyd Huff to the citation first issued there was a controversy as to the ownership of the jewelry, and there seems never to have been any real reason for his being cited to show what property was in his possession as he had already disclosed that fact, of which the executor was well aware at the time of the filing of the original petition. So, from the first there was but a controversy between C. Floyd Huff and Margaret Huff on the one hand and the executor and legatees on the other as to who was the owner of the jewels which Margaret Huff alleged were her property by reason of a gift to her made by the testatrix in her lifetime. The probate court, therefore, had no jurisdiction of the subject-matter or to hear and determine this controversy, and its order made on June 7, 1927, was *coram non judice* and void, as were also all the orders made subsequent thereto in furtherance of, and based upon, the order first made.

The case of *Moss* v. *Sandefur*. 15 Ark. 381, began in the probate court by the filing by the executor of a petition alleging that Moss had in his possession and had concealed money belonging to the estate of his decedent and prayed for a discovery by Moss of the property in his possession. Moss answered admitting that he had in his possession a certain sum of money for safekeeping which he then held for the use of any one

to whom it might belong, but denied that it belonged to, or was owned by, the decedent at the time of his death. On the hearing the probate court found that the money belonged to the estate of the decedent and adjudged that the executor recover from Moss the said sum. In that case the court found that by the statutes and Constitution then in force probate courts were clothed with authority to compel the attendance of persons charged with concealing or embezzling any effects of the estate of a deceased person and to force them to make discovery on oath, and to order their delivery to the executor or administrator entitled to receive the same. The court held that these provisions were salutary, but could not be extended so as to turn "into probate courts from their accustomed channels a great stream of litigation touching contested rights to personal chattels, which these courts from their Constitution are so little calculated to sustain." In summing up the facts in the case, the court said: "In the case before us, the discovery that was required shows the money in question to be in such an equivocal attitude as to be reasonably a subject of litigation between the executor or administrator or distributees of James Moss, deceased, predicated upon the ownership of the slave, who deposited it, for safekeeping, in the hands of the respondent, and the executor of Dunn, who claims that it had been derived from his testator in his lifetime, or had been abstracted from his estate since his death, in some manner that did not divest his right to it. The case then, shown by the discovery, was not of either class to which the authority of the probate court to make the order of delivery, extended."

The case of *Fancher* v. *Kenner*, 110 Ark. 117, 161 S. W. 166, was a case in which the executor alleged the possession of another of money and personal property belonging to the estate of the testator which was concealed and withheld from the petitioner and with the prayer that discovery be made of the property belonging to the estate and that it be required to be delivered to

the executor. The person in possession of the property claimed that the same had been given to him by his mother, the executor's testatrix, and on a trial in the probate court the court found under the facts that the property belonged to the estate. There was an appeal to the circuit court where without objection the cause was submitted to a jury, and the verdict was in favor of the person in possession as to all the articles claimed except one, and as to that the verdict was in favor of the executor. The court rendered judgment responsive to the verdict and assessed each litigant with one-half the costs. On appeal this court said: "This court, in passing upon the provisions of the Revised Statutes, in *Moss v. Sandefur*, 15 Ark. 381, said that, their purpose was 'not to invest the probate court with jurisdiction of contested rights, and matters of litigation, as to the title to property, between the executor or administrator and others.' The sections of the Revised Statutes construed by the court in *Moss v. Sandefur, supra,* were enacted under the Constitution of 1836, giving to the probate court such jurisdiction in matters relative to the estates of deceased persons as might be prescribed by law. Constitution of 1836, art. 6, § 10. At the time when above case was decided the Legislature had not conferred upon probate courts jurisdiction to hear contests as to the title of property between executors and administrators and others claiming title to property as against the estate of deceased persons. They had no such jurisdiction then, nor do they have it under the present Constitution. Constitution of Arkansas, art. 7, § 34; Kirby's Digest, § 1340. The court, under the statute, had jurisdiction only to compel the appellee to disclose what personal property he had in his possession belonging to the estate of Margaret Kenner, and to cause him to deliver the same to the executor."

In that case, however, the court found that the procedure in the probate court and in the circuit court on appeal was acquiesced in, which resulted in the incur-

ring of costs incident to the trial of the rights of the property which might have been prevented by timely objection to the procedure, and the judgment of the lower court adjudging the controverted rights and one-half the costs to each of the litigants was not disturbed, on the theory that the same had been caused unnecessarily by the party complaining and had been acquiesced in.

If we give full effect to the conclusions last reached in *Fancher* v. *Fenner, supra,* it would have no application in the instant case, for the reason that at no time did the appellants acquiesce in or recognize the jurisdiction of the probate court, as appears from the motion filed in June, 1927, to vacate the order of the court on the allegation made that it had no jurisdiction to hear the controversy or to make the order directing the delivery of the jewelry to the executor.

In *Lewis* v. *Rutherford,* 71 Ark. 218, 72 S. W. 373, we held that probate courts have only such special and limited jurisdiction as is conferred upon them by the Constitution and statutes, and can only exercise the powers expressly granted and such as are necessarily incident thereto. The Constitution of 1874 did not enlarge the jurisdiction of probate courts, and, since these are courts of limited and special jurisdiction, the jurisdiction would not be extended beyond the constitutional limits. *Hart* v. *Wimberly,* 173 Ark. 1083, 296 S. W. 39. Indeed, it is the general rule that probate courts have no jurisdiction as to any subject except that expressly or by necessary implication given by the Constitution and statutes.

"But extensive and important as this jurisdiction (that of probate courts) is. it is very different from that of courts of really general law and equity jurisdiction, which it is said is 'undefined, general, like space, ending nowhere, and embracing all that is.' It is limited in its general scope, as to subject-matter, to the undisputed property of decedents and of wards, and, as to persons, to those interested in such property as equitably or

legally entitled to some distributive share therein, or in the residue, and to creditors who voluntarily, upon general notice and without special citation, present their claims. All controversies between executors, administrators or guardians, or those interested in the particular estate, and other persons not interested in it, must be settled in another forum." Section 23, p. 20, Gary's Probate Law (3d ed.).

"From all the cases it would seem that the rule as to jurisdiction of subject-matter is substantially as stated in Massachusetts by Chief Justice PARSONS nearly a century ago: 'When the question before a judge of probate is only as to the manner of exercising his jurisdiction on a subject of which some court of probate has jurisdiction, then, if he mistakes, the means of correcting such mistake is by appeal. But when the question is whether the court of probate has jurisdiction of the subject or not, he must decide it, but at his own peril. If he errs by assuming a jurisdiction which does not belong to the probate court, his acts are void'." Section 34, p. 28, Gary's Probate Law. *Mobley* v. *Andrews,* 55 Ark. 222, 17 S. W. 805; *Stewart* v. *Lohr,* 1 Wash. 341, 25 Pac. 457; In re *Woolford,* 10 Kan. App. 283, 62 Pac. 731; *Bolander's Estate,* 38 Ore. 490, 63 Pac. 689; *Falke* v. *Terry,* 32 Col. 85, 75 Pac. 425; Works on Courts and Their Jurisdiction, p. 440.

In the recent case of *Moss* v. *Moose,* 184 Ark. 798, 44 S. W. (2d) 825, the principles announced were recognized and reaffirmed.

■ It is the contention of the appellant that the time for taking the appeal ran from the order of August 6, 1929, whereas it is the contention of the appellee, and was upheld by the circuit court, that the time for taking the appeal was limited to six months after June 7, 1927. The argument of appellant is that the order of June 7, 1927, did not become final until its motion to vacate the same for want of jurisdiction had been acted upon, and, as this was not done until August 6, they had six months

from that date in which to perfect the appeal. We think that the ruling of the circuit court on this question was correct, but, as we have seen, the judgment of the probate court being void, the circuit court on appeal erred in directing the appellant to carry out the judgment of the probate court and to deliver to the executor the subject-matter of the suit, but should have treated the proceedings as an application in the nature of certiorari and have quashed the void order. For this error the judgment must be reversed, but, since a remand for further proceedings would serve no useful purpose, the order of the probate court being one the appellants are not bound to obey, we feel justified in treating the appeal as if it had been a petition for certiorari, as it brought up for the inspection of the circuit court the entire record, from which want of jurisdiction clearly appeared and which would entitle the appellants to an order quashing the judgment of the probate court. We have held that where a writ of certiorari is improperly brought but within the time in which an appeal would be allowed, the petition would be treated as .an appeal on the principle that the law regards substance rather than form, and also because certiorari will lie to quash a void judgment, even though the judgment might have been vacated and set aside on appeal. *Browning* v. *Waldrip*, 169 Ark. 261, 273 S. W. 1032; *Williamson* v. *Mitchell Auto Co.*, 181 Ark. 693, 27 S. W. (2d) 96.

The judgment of the trial court is therefore reversed, and the cause is remanded with directions to treat the appeal as a proceeding by certiorari, and that it enter an order for certification to the probate court quashing the orders of that court rendered on June 7, 1927, and those made with relation thereto.

KIRBY, J., dissents.